Davis, Judge,
delivered the opinion of the court:
Miss Madison, a non-veteran civil servant, was removed in March 1959 from her overseas post with the Army because *987 she had refused to accept a reassignment within the same ■classification (but with somewhat different duties) at the same grade and pay, and in the same city. Her main complaint is that this reassignment was invalid because it resulted from prior improper actions of the Army and that therefore she was justified in rejecting the change. An appeal on this ground, and others, was denied by the Civil Service Commission and the Army’s civilian-personnel grievance system. In this court both parties have moved for summary judgment and the case is ripe for disposition.
Prior to December 1956, plaintiff was a grade GS-9 Organization and Methods Examiner (a title later changed to Management Analyst) at Leghorn, Italy, with the Army’s Southern European Task Force (SETAF). At that time she was involuntarily separated and returned to the United States on the ground that she had refused to follow her work to Verona, Italy. The Appeals Examining Office of the Civil Service Commission reversed this administrative action as in violation of plaintiff’s procedural rights, and ordered her retroactively “restored to the position of Organization and Methods Examiner, GS-9(d), $5,845.00 per annum, Department of the Army, Leghorn, Italy, from which she was removed December 12,1956.” The immediate employing agency (SETAF) appealed this ruling to the Commission’s Board of Appeal and Eeview, but the Army Department’s Director of Civilian Personnel later agreed that there had been procedural defects in the process of removal. He withdrew the appeal, and instructed SETAF to comply with the recommendation of the Appeals Examining Office.
After the ruling of the Appeals Examining Office but before the Director of Civilian Personnel acted to cancel the appeal in October 1957, SETAF advertised for a GS-9 Management Analyst at Leghorn (plaintiff’s position) and hired Fern Lindgren to fill the vacancy. When higher authority thereafter decided to comply with the decision of the Ap *988 peals Examining Office, SETAF offered to restore plaintiff, not to Leghorn which then had no opening-, but to a GS-9 position as Management Analyst at Verona. She was so restored in February 1958, to a job in which she had a working-twin, Angela FitzGerald, who had the same duties but greater-seniority. Unknown to plaintiff, her position at Verona was a temporary “over-strength” slot created for her. She now-says that placing her in this position in Verona did not satisfy-the Commission’s restoration order.
Apparently the Army felt that it could not continue to. maintain these two identical positions at Verona. In August. 1958, the agency proposed to resolve the problem by reassigning plaintiff from Verona to Leghorn (at the same pay and. grade (GS-9)i) to a Management Analyst place then open there. She was chosen since she had fewer retention credits-, than Miss FitzGerald. Plaintiff rejected this proposal,, largely because she did not ait that time want to change her-living quarters, and the notice of reassignment was cancelled.. In November 1958, however, the agency decided to abolish the over-strength slot in Verona by assigning either plaintiff' or Miss FitzGerald to a different Management Analyst job. (also GS-9 and with the same pay) in Verona in which there-happened to be a vacancy. This position was for a Management Analyst (Records Disposition) in the Adjutant General’s Division of SETAF Headquarters, and involved somewhat different work (though still within the Management. Analyst category) than plaintiff had been doing. Miss Madi- ■ son and Miss FitzGerald were each asked to take this assignment. Both refused. The agency then selected plaintiff' because she had a lower retention standing than her working twin.
Despite repeated efforts! to have plaintiff accept the change- and report at the Adjutant General’s office, she refused and would not appear at the new location. Her stand was that. she did not like the work at, and was not qualified for, the-other job — and that she could not be forced to take it because-, she had never been properly restored to her 1956 job. When. *989 It was clear that sbe would not submit to tbe order of reassignment, sbe was dismissed.
We put entirely aside tbe possibility that tbe employing agency’s actions toward plaintiff stemmed from bad faitb, malevolence, partiality, an effort to harass or get rid of her, •or an attempt to induce her to resign or leave. Plaintiff’s briefs are threaded with this suggestion but we could not, on the present record, accept such a contention on these cross-motions for summary judgment; a trial would plainly be necessary if plaintiff has shown enough to call for a trial on that issue. We do not remand for a hearing because plaintiff’s counsel, in response to questions from the bench on oral .argument, explicitly disavowed any such claim of maliciousness or bad faith, and agreed that he had not raised a triable issue of lack of good faith. Accordingly, the rule of Kelly v. United States, 183 Ct. Cl. 571, 138 F. Supp. 244 (1956)— that neither a purported “compliance” in bad faith with a Civil Service Commission restoration order nor its direct •consequences will be given effect[1] — is inapplicable to this •case.
We are faced, then, with the claim that the agency, although in good faith, did not properly comply with the Civil Service Commission’s order to restore plaintiff to her spot in .Leghorn, and that plaintiff’s present predicament results .from that failure. The argument is that there were two defects in her restoration: (a) sending her to Verona instead •of Leghorn, and (b) placing her in a temporary position in Verona coupled with Miss FitzGerald who had higher seniority. From this incorrect restoration there followed, plaintiff says, her vulnerability to being transferred to the position in the Adjutant General’s office in Verona which she rejected.
We do not have to decide whether or not the agency properly restored plaintiff in February' 1958, taking account of the circumstances in the fall of 1957 and early 1958 after the Director of Civilian Personnel decided to drop the adminis *990 trative appeal from the decision of the Appeals Examining Office. In any event, plaintiff’s claim (on this point) must-fail because she thereafter rejected the chance to work in Leghorn. The offer of transfer, in August 1958, would have fully satisfied the restoration directive. It came six months; late and entailed the inconvenience of moving once again,, but there is no doubt that, if plaintiff had accepted it, she would have been as “restored” as she reasonably could be, SETAF’s initial failure to place plaintiff in Leghorn in-February 1958 did not so taint all that agency’s further actions that correction could never be made. Mistakes are not always irreversible, and there is no good reason why this one should be held beyond redemption. When corrective action was proposed, plaintiff should have acquiesced if she still considered her original restoration to have been inadequate. The inconvenience of moving was not sufficient excuse, especially since she would almost certainly have had her moving expenses paid by the Army. Nor was she entitled to insist that the original error, if there was one, be petrified for eternity.
It follows that plaintiff cannot now impeach the circumstances of her restoration to Yerona. She deliberately gave-up the chance to avoid the hazards of the temporary over-strength job in which she was put there, and of the civil-service dangers of being junior to Miss FitzGerald. Having-made that choice, plaintiff no longer has the right to say that she was improperly restored. We must take her situation in Yerona, at least from August 1958 forward, as lawful and proper. On that basis it was, of course, within the agency’s discretion to reassign her to the Adjutant General’s office in that city — provided that the correct procedure was followed. Whatever the difference in the two positions, SETAF could reassign plaintiff since both jobs called for Management Analysts, both were at grade GS-9, and the pay was the same.[2]
*991 Plaintiff’s second claim is that this reassignment was procedurally defective because the agency used a limited retention register — containing only her name and Miss Fitz-Gerald’s — as the selection device (without determining which. Management Analyst was better qualified). Again, we must' assume that this was done in good faith. The only question is whether it was lawful under the regulations.[3] Plaintiff’s-point is that any use of a retention register, full or limited,, was prohibited for reassignments of this character, and, at the least, use of a limited or special register was forbidden.
As for the Civil Service Commission’s regulations, we-agree with the Board of Appeals and Review that use of a “retention register”, even a shortened one, “as a management device in such cases is not prohibited by the regulations” and the “agency had ample authority” to fill the vacancy to which Miss Madison was reassigned “through noncompetitive' means.” Rule VII of the Commission’s regulations, 5 C.F.R.. § 07.1, grants wide discretion (in accordance with regulations) to fill positions solely on the basis of merit and fitness; and without regard to political or religious affiliations, marital status, or race. See, also, 5 C.F.R. § 2.101 (1957 Supp.). The regulation on agency authority, 5 C.F.R. § 2.501, broadly grants general reassignment authority. So long as the-agency is fair, there is no violation of Commission rules. The-reference to “merit and fitness” was not intended to-exclude impartial standards for measuring seniority, but, rather, to prohibit bias and partiality; “merit and fitness”' can cover seniority when it is difficult or inadvisable to select on the basis of individual performance. And since there was no reduction in force, the Commission’s regulations on the make-up of retention registers for that purpose (see S< CFR 20.4(d) (1957 Supp.)) were inapplicable. The “retention register” employed by SETAF in this case was not tech *992 nically such, but simply an ad Kog method for determining the seniority, for reassignment purposes, of the two Management Analysts to whom the agency reasonably wished to ■restrict its selection. Cf. Creamer v. United States, ante, 408, 412-14.
The Army’s Civilian Personnel Regulations also left SETAF free to act as it did. Plaintiff says that' Paragraph 1-8 (b) of CPE (Civilian Personnel Regulations) R 3 (“Reduction in Force”) provided that “the reduction in force regulations do not apply and will not be utilized in effecting ;* * * (g) Reassignment to vacancies”, and that retention ■registers are necessarily part of the reduction-in-force ■process. It is very doubtful whether this prohibition on use •of the “reduction in force regulations'1'1 applies to retention registers per se. We have pointed out, in any event, that the ■agency did not use a true retention register but a special "method of choosing by seniority. Moreover, paragraph 1-8 (c) of CPR R 3 encouraged the utilization of retention ■ registers in some types of reassignment where it is difficult or ■unwise to differentiate between employees on the basis of their individual performances. Particularly in view of the ■ discretion accorded employers to reassign personnel, we read .this provision as sanctioning, by analogy, some type of -seniority gauge where it is thought unsound to select on ' “merit.” It is clear that in this instance the agency felt that way, and we have no reason to overturn its judgment. Plain- ' tiff’s reassignment was not made invalid because SETAF -chose to transfer her, as the junior of the two analysts being • considered.[4]
The last of plaintiff’s objections relates to the Army griev- -• anee procedure. After the Civil Service Commission denied ’her appeal, she was finally accorded, after some baching and : filling, the right to process her dismissal as a grievance.[5] *993 Belief was denied at all levels. No oral hearing was granted before the initial grievance board; the determinations were-on a full paper record. This is cited as a procedural defect-voiding the removal. We rej ect this claim because the Army could reasonably decide that it was not feasible to give an-, oral hearing. Plaintiff had returned to the United States: by this time, but the grievance board was established in Europe by SETAF. Though an oral hearing is normally granted if requested, we do not construe the Army’s Civilian. Personnel Regulations as absolutely requiring such a presentation in special circumstances like those existing here.[6]' There was a subordinate provision (issued by the Army in Europe) that one command “may” request another command' to hear the grievance where an “employee serviced by one-command is physically located within the geographical boundaries of another command”, but, if this applied at all to commands outside Europe, it was not mandatory and’ SETAF could properly determine that any gain due to-transfer of the case to the United States for hearing would be-offset by the loss of having the grievance heard by personnel totally unfamiliar with the problems and requirements of the-overseas theatre. There is no showing that the documentary record was inadequate.[7]
Plaintiff is not entitled to recover. Her motion for summary judgment is denied and the defendant’s motion is, granted. The petition is dismissed.

 See, also, Smith v. United States, 151 Ct. Cl. 205, 207, 209 (1960).

 Plaintiff says that she was not qualified for the records job in the Adjutant General’s Division, but there is no reason to reject the agency’s managerial determination to the contrary. Questions of that type are normally left to the employing agency.

 A full retention register would have Included Miss Fern Lindgren from Leghorn, who was junior to plaintiff. Since the agency did not wish to-have Miss Lindgren move to Verona (to fill the Adjutant General’s spot) and* then to have plaintiff move to Leghorn (to fill the vacancy created by Miss-- ' Lindgren’s reassignment), it decided to omit Miss Lindgren’s name. Absent bad faith, this was a permissible exercise of discretion if permitted by the-regulations. We hold below that the regulations did not prohibit this-, type of seniority-selection device.

 We add, though we do not rest decision on this ground (which was not ..argued);, that we have the gravest doubt whether an employee can reject ■ a reassignment, where administrative remedies are available, because the reassignment is believed to be invalid. Plaintiff: was implored to proceed to the new job and to test the reassignment through the Army’s grievance •.procedure while she was in that position, but she remained adamant.

 Plaintiff complains that she was not given adequate information as to the time limits for instituting a proceeding under the grievance procedure, but, fif so, this became immaterial when she was ultimately granted the right *993 (even though the Army had some question whether she had exercised it within time).

 There is no explicit provision in the regulations requiring an oral hearing, or an oral presentation by the aggrieved employee, in all cases. Moreover, the regulations permit several other requirements to be omitted or-relaxed where not feasible or appropriate; we think it fair to take this attitude into account in deciding whether the regulations insist rigidly on am oral hearing or an oral presentation in all instances

 Plaintiff also finds a procedural violation in the fact that her grievance-was determined by the Deputy Post Commander at SETAE, rather than the Commanding Officer who is supposed to decide grievances himself, without delegation. The defendant points out that the Deputy Post Commander was= in fact the commanding officer of the particular installation, the Verona Military Post, with authority, at that time, over civilian employees in the-Verona area.