Daniel S. **URBINA**

v.

The **UNITED STATES.**

No. 113–63.

United States Court of Claims.
July 15, 1970.

**1282**

Moreland G. Smith, Jr., Washington, D. C., for plaintiff. Carl L. Shipley, Washington, D. C., attorney of record. Rufus W. Peckham, Jr., and Shipley, Akerman, Pickett, Stein & Kaps, Washington, D. C., of counsel.

Peter J. Brickfield, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant. Katherine H. Johnson, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM.

This case was referred to Trial Commissioner Saul Richard Gamer with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on January 26, 1970. Exceptions to the commissioner's report and recommended conclusion of law were filed by plaintiff and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the trial commissioner's opinion, findings and recommended conclusion of law, with minor changes in calculations, as hereinafter set forth, it hereby adopts the same, as modified, as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover and judgment is entered for plaintiff in the amount of $68,300.80 as back salary, plus $15,684.90 as living quarters allowance not paid, plus $645.54 as living quarters allowance paid but erroneously recouped by deductions from plaintiff's salary, making a total amount of $84,631.24, less $30,483.85 representing plaintiff's outside earnings and less $983.06 representing a reimbursement to the Government of the lump sum leave payment made to plaintiff at the time of his separation, or the net sum of $53,164.33 of which $4,439.97 should be credited to the plaintiff's Civil Service Retirement Fund account, and $457.25 should be credited to plaintiff's Federal Employees' Group Life Insurance account; the balance of $48,267.11 shall be paid to plaintiff.

## OPINION OF COMMISSIONER

GAMER, Commissioner:

Plaintiff was, on October 16, 1961, separated from his position with the Department of the Air Force for alleged submission of false claims for reimbursement of living quarters allowances. By its decision of May 12, 1967,[1] on the parties' motions for summary judgment, the court held that such separation was improper. It accordingly granted plaintiff's motion and entered judgment in his favor, with the amount of the recovery to be determined pursuant to Rule 47(c) (now Rule 131(c)).

Following the court's decision, the agency, on November 18, 1967, reinstated plaintiff and made a payment to him of back salary (less appropriate deductions) for the period commencing May 15, 1967 (the first workday following the court's decision), to the date of reinstatement. There is no dispute concerning the amount of such payment. Accordingly, the issue now is the proper amount of recovery resulting from plaintiff's having been off the payroll from October 16, 1961 through May 14, 1967.

1. 180 Ct.Cl. 194.

Despite extensive attempts by the parties to agree upon the amount due for such period, the effort failed, necessitating a trial.

Based upon the record herein, the amount to which plaintiff is entitled is calculated as follows:

1. At the time of his separation on October 16, 1961, plaintiff was employed at Fuchu Air Station, Japan, as a Supervisory Construction Management Engineer, Grade GS-12, at a salary of $10,-515 per annum. He had been serving in such position since February 5, 1961. The gross pay during the period herein involved that plaintiff would have received in such position and at such Grade GS-12 level was $68,300.80. This amount includes the increases in salary to which plaintiff would have become entitled subsequent to October 16, 1961. There is no dispute between the parties concerning plaintiff's entitlement to such increases. The Back Pay Act of 1966 (80 Stat. 94, 5 U.S.C. § 5596 (Supp. IV, 1965–1968)) specifically provides therefor. The amount of the recovery to which plaintiff is entitled is governed by such Act even though plaintiff's separation took place prior to its enactment. Ainsworth v. United States, 399 F.2d 176, 185 Ct.Cl. 110 (1968).

■ Plaintiff contends, however, that the back salary to which he is entitled should be calculated at the higher Grade GS-13 level instead of the Grade GS-12 level he occupied at the time of his separation. He says his assignment on February 5, 1961, to the Supervisory Construction Management Engineer Grade GS-12 job was improper, and that instead, he should have been assigned to a position which, subsequent to February 5, 1961, was classified as Grade GS-13.

The contention cannot be accepted. The record is wholly insufficient to support it. The record simply shows that, after serving with the Air Force in Japan since March 14, 1960, plaintiff

was advised by a letter dated December 28, 1960, that as a result of a reorganization, the Inspection Specialist GS-12 position in which plaintiff was then serving was canceled, but that, as a career employee, he was entitled to reassignment to some other position in the competitive area. Accordingly, the letter offered a reassignment to the position of Construction Management Engineer in the same Grade GS-12 and at the same salary, a position which was at the time being occupied by a career-conditional employee. The letter further stated that the effective date of the reassignment, provided plaintiff accepted, would be on or about February 5, 1961, but that if he did not accept, he would be given a notice of reduction in force.

On December 30, 1960, plaintiff accepted the offer of reassignment.

However, by another letter of February 3, 1961—two days before the reassignment was to become effective—plaintiff was advised that the previous letter of December 28, 1960, was thereby "corrected" and that instead of being reassigned to the position then occupied by the career-conditional employee (which would have resulted in such employee's displacement), plaintiff would, again effective February 5, 1961, be reassigned to the newly established position of Supervisory Construction Management Engineer. Plaintiff entered upon such new position, which was also in Grade GS-12, on February 5, 1961, and this was the position he was occupying when he was separated on October 16, 1961.

■ Other than plaintiff's uncorroborated testimony at the trial that at some later (but unestablished) date, the position to which he was first scheduled to be reassigned was subsequently upgraded to GS-13, there is nothing else in the record upon which plaintiff relies to support this basic fact.[2] Further-

---

2. Presumably this unsatisfactory state of the record on this issue is the reason that plaintiff fails, either in his requested

findings or in his brief, to propose the amount of the judgment to which he feels entitled. Plaintiff simply requests the

more, even assuming there was in fact such a subsequent upgrading, there is nothing to show that what was done constituted a violation of any regulation or statute, or was in any other way improper. Plaintiff's brief offers the court no theory upon which his February 5, 1961 reassignment to the newly created GS-12 position could be held to be unlawful. Agencies have wide discretion in effecting reassignments. Madison v. United States, 174 Ct.Cl. 985 (1966), cert. denied, 386 U.S. 1037, 87 S.Ct. 1481, 18 L.Ed.2d 601 (1967). There is no showing at all that despite plaintiff's acceptance of the first offer of reassignment, the agency could not, before such reassignment became effective, appropriately cancel it and instead reassign him to another position which was vacant. This is especially so in view of the presumption of validity with which official action is clothed. Harrington v. United States, 161 Ct.Cl. 432 (1963). If, based on such acceptance (plaintiff says he protested the second reassignment, but the record otherwise contains no evidence of any such protest) plaintiff's reliance is on some theory of contract law, his position would not be improved since it is plain that public employment does not, in a situation such as is here involved, give rise to a contractual relationship in the conventional sense. Borak v. United States, 78 F. Supp. 123, 110 Ct.Cl. 236, cert. denied, 335 U.S. 821, 69 S.Ct. 43, 93 L.Ed. 375 (1948). *Cf.* Lawrenson v. United States, 153 F.Supp. 790, 139 Ct.Cl. 370 (1957) (an employee's right to a pension or retirement pay is not contractual and, prior to the time the annuity actually becomes payable, may be revoked or altered by the same authority that granted it).

Nor is there any showing that, if plaintiff did feel aggrieved by the reassignment to the newly created position, he took the necesary administrative steps to appeal the allegedly unlawful action. It is true that in his administrative appeals with respect to his dismissal, plaintiff did make reference to his reassignment to the newly created position rather than to the position being occupied by the career-conditional employee, but this reference was made only as one item of evidence offered to support his contention that the dismissal proceedings against him were motivated by malice. The contention was that favoritism to the career-conditional employee and discrimination against plaintiff were the bases for the second reassignment. However, these oblique references to this February 1961 reassignment incident in his administrative appeal on the October 1961 dismissal certainly cannot be considered as constituting a timely appeal in its own right on the reassignment matter. It was never presented in that manner by plaintiff nor consequently was it ever understood as such by the Air Force or the Civil Service Commission. Similarly, plaintiff cannot, under the circumstances, use this proceeding to determine the amount of his back pay recovery resulting from his wrongful separation as the mechanism to question at this late date the correctness of the grade classification of the position he was holding at the time of his unwarranted separation.[3] Indeed, were the court to attempt at this time to adjudicate as an independent matter the validity of plaintiff's contention that the second reassignment was invalid because it was motivated by prejudice and malice, it would have to be concluded that this record is wholly insufficient to support

court once more to decide the issues in his favor, with the amount to "be precisely calculated by the General Accounting Office" (Pltf. Brief at 5). However, the sole purpose of the present Rule 131(c) proceeding was to determine at this time the amount of the judgment to be entered in plaintiff's favor. Pursuant to plaintiff's motion for call, the General Ac-

counting Office has already submitted to the court a computation based on the judgment entered by the court on May 12, 1967, the computation being based on back pay at the GS-12 grade level.

3. Plaintiff's petition in this court does not mention the reassignment matter. It only contests his dismissal.

the charge. *Cf*. Madison v. United States, *supra*.

■ Plaintiff's back salary is, therefore, to be calculated at the Grade GS-12 level, the grade of the position he was actually occupying at the time of his discharge. Normally, government employees are entitled only to the salaries of the positions to which they are appointed and in which they serve. Ganse v. United States, 376 F.2d 900, 180 Ct.Cl. 183 (1967).

■ 2. When separated, plaintiff was, in accordance with Air Force authorizations, residing with his wife and his son in nongovernment quarters and receiving living quarters allowances of $107.80 per pay period. Had he not been wrongfully separated from his position, plaintiff would, during the period herein involved, have received living quarters allowances totaling $15,684.90. Defendant concedes that such allowances are recoverable,[4] but would apparently restrict the recovery only to those periods after his separation during which he actually remained in Japan. After continuing to reside in Japan with his family for a period subsequent to his separation and attempting to seek work there, plaintiff came to the States where he sought and ultimately obtained some employment.

It seems plain that plaintiff is entitled to recover the full amount of the allowances he would have received had he not been wrongfully separated. Under Section 3 of the Back Pay Act of 1966, where an employee's separation is found to be unjustified or unwarranted, he is entitled "to receive for the period for which such personnel action was in effect an amount commensurate with the amount of all or any part of the pay, *allowances*, or differentials, as applicable, which such * * * employee normally would have earned during such period if such personnel action had not occurred," the section further providing that the employee *"for all purposes*, shall be held and considered to have rendered service for such agency during such period * * *." (Emphasis supplied) [80 Stat. at 95] *Cf*. Vitarelli v. United States, 279 F.2d 878, 150 Ct.Cl. 59 (1960), where the court held that a civilian employee unlawfully separated from his overseas position was entitled to recover (under the back pay provisions of the Act of August 26, 1950, 5 U.S.C. § 22–1 (1964), pertaining to security risk dismissals) the 25 percent foreign or territorial differential for the full period of his unlawful removal, and that no deductions of such differential were to be made for any times during such period when the employee was absent from the foreign area.[5]

■ 3. As shown in the court's opinion of May 12, 1967, living quarters allowances paid to plaintiff in the amount of $645.54 for the period July 22, 1960, through October 31, 1960, as authorized by the Air Force, were subsequently erroneously disallowed and recouped by deductions from plaintiff's salary. The disallowance was grounded upon the same mistaken premise as was plaintiff's separation. Plaintiff is entitled to recover this amount.[6]

---

4. Apparently plaintiff's failure to specifically claim these allowances in his requested findings or brief is inadvertent. During the course of the pretrial proceedings and in the required submissions made by counsel to each other in connection therewith, plaintiff made plain he was claiming such allowances.

5. In Winchester v. United States, 155 Ct. Cl. 600 (1961), where an International Cooperation Administration employee serving in Ceylon was returned to the States, where he continued to work for the agency for an additional period of time, and was then wrongfully separated but subsequently reinstated, the foreign post differential for the period of time he was not actually stationed in Ceylon was not allowed as part of the recovery. The court distinguished *Vitarelli*, pointing out that "plaintiff in that case was actually separated from the service while in the foreign country." [at 604]

6. Although this item is not mentioned in either party's requested findings or brief, there is apparently no disagreement with respect to it. During the course of the pretrial proceedings, plaintiff made plain

█ 4. During the period here involved, plaintiff had outside earnings of at least $30,483.85. Such earnings must, of course, be deducted from the gross amount of plaintiff's back pay award, as plaintiff concedes.[7] The parties are, however, in dispute concerning certain aspects of this outside earnings issue.

█ (a) Defendant contends that the record supports the conclusion that, during the 2½-month period in 1961 immediately following plaintiff's separation, i. e., October 16, 1961 to December 31, 1961, plaintiff had outside earnings in the amount of $1,773.46, and that the deduction should, therefore, be increased by such amount. Plaintiff denies that he earned any such amount during such short period.

Defendant's contention is based solely upon a figure in such amount of $1,773.-46 contained on a State of California, Department of Employment, form entitled "Unemployment Insurance—Notice of Computation" and indicating such amount was earned for the quarter ending December 1961. (At some time subsequent to his dismissal, plaintiff registered with such department.) Because of such figure on this document, plaintiff's counsel stipulated during pretrial proceedings that plaintiff had earned that amount from outside employment during such 2½-month period. However, after plaintiff's explicit testimony at the trial that he had no such earnings, that the Air Force was his only employer in 1961, and that the figure on the form was meaningless to him unless it represented Air Force earnings which did extend into such quarter, counsel for plaintiff sought leave to be relieved from his stipulation. Defendant's counsel interposed no objection and the motion was, accordingly, granted.

Nevertheless, on the basis of such exhibit, defendant still presses for a deduction in such amount for alleged outside earnings during such period. Plaintiff's clear denial testimony at the trial, however, which was subject to cross-examination, and which was supported by other evidence in the record, is entitled to far greater weight on the point than is the unexplained, third-party, and therefore essentially hearsay, document upon which defendant relies. Supporting plaintiff's denial is the fact that he immediately, i. e., on October 23, 1961, appealed his dismissal to the Civil Service Commission, and a hearing was held on plaintiff's case on January 23, 1962, by the Twelfth Civil Service Region, San Francisco, California. Plaintiff testified that his time prior to such hearing, which comprised the very period here in issue, was taken up in preparation therefor, and there is nothing in the record which would contradict this wholly credible and logical testimony.[8]

---

he was claiming this item, and proposed the entry of a judgment which included it.

7. Plaintiff's requested finding erroneously sets forth the figure as $29,962. It is obvious that plaintiff inadvertently omitted from this computation the figure of $521.85 which, in another requested finding, he concedes was earned by him in 1963. Defendant's computation, also apparently through inadvertence, fails to include such figure of $521.85.

8. Defendant further contends that plaintiff's counsel was allowed thirty days after the trial to write to the California Bureau of Unemployment Compensation to inquire "where and how they got that figure of $1,773.46," [Def. Requested Findings at 2] but that plaintiff's counsel failed to do so, thus constituting an additional reason entitling defendant to the deduction. Although plaintiff's counsel does not controvert the contention (no objections to defendant's requested findings or a reply brief were filed), it is nevertheless plain that defendant errs. As is clearly indicated in the trial transcript, the record was left open for thirty days after the completion of the taking of testimony for an entirely different purpose, i. e., to permit defendant to check certain Government files concerning the issue of whether plaintiff's back salary should be computed at the Grade GS-12 or Grade GS-13 level. [Tr. at 112–16] Although the materials that plaintiff's counsel had submitted to defendant's counsel pursuant to the commissioner's

(*b*) Defendant would deny to plaintiff any recovery with respect to the years 1962 and 1963 (and presumably for the 2½-month period in 1961 following his dismissal if its contention that plaintiff should be deemed to have had outside earnings during such period is not accepted) because it considers plaintiff's failure to have any outside earnings for 1962, and only $521.85 for 1963, as indicative of a failure on plaintiff's part to have "made any serious efforts to obtain gainful employment on a permanent basis at a definite location, either in Japan or in the United States, notwithstanding his experience as a Construction Management Engineer with an earning capacity in excess of $12,000 per year." [9]

However, the record is more than sufficient to sustain plaintiff's burden of proving that he was ready, willing and able to work during those years and that he diligently sought employment both in Japan and the United States. He registered with the California Department of Employment and sought employment with other Government agencies and with commercial firms (as shown by exhibits introduced into evidence),[10] including such firms in Japan. In 1963 plaintiff was able to find some employment in the United States, and commencing in 1964 he began to earn substantial sums. Defendant apparently gives no consideration to the burden plaintiff was under in obtaining employment after having been discharged from the Air Force for allegedly having attempted to defraud the agency and the effect this would have upon his "earning capacity in excess of $12,000 per year," which was the salary attached to the position from which he had been separated. Defendant suggests no reason why plaintiff would not have wanted to work. During the period involved his savings were being substantially depleted in his attempt to support himself, his wife and his son.

Furthermore, during this period plaintiff was personally engaged in prosecuting his appeals. As noted, his hearing before the Twelfth Civil Service Region in San Francisco, California, was held on January 23, 1962. The Region's Appeals Examiner sustained plaintiff's removal by decision of February 6, 1962, and plaintiff thereupon prosecuted his appeal *pro se* to the Civil Service Commission's Board of Appeals and Review, which, by decision of May 25, 1962, affirmed the Appeals Examiner. After selection of and consultation with Washington, D. C., counsel, plaintiff's petition was filed on April 5, 1963. An illegally discharged employee will not be denied his back salary for failure to work during periods when his time is reasonably consumed in prosecuting appeals from such discharge. Schwartz v. United States, 181 F.Supp. 408, 149 Ct.Cl. 145 (1960).

---

pretrial order did indicate that plaintiff himself was contending that his back pay should be computed at the GS-13 level, in none of the three pretrial conferences held in this case did plaintiff's counsel indicate that he would press for a back pay computation on such basis. Accordingly, when, on the eve of trial, plaintiff's trial counsel did inform defendant's counsel that he would, at the trial, so contend, the issue was regarded as a "new" one [Tr. at 112, 115] and on that basis, and defendant's counsel's claim of "surprise," [Tr. at 116] the record was left open to enable defendant's counsel to make certain documentary investigations with respect thereto. And, as a result of the record thus being left open, defendant,

upon its motion made within such 30-day period, was, without objection by plaintiff, permitted to introduce into evidence an additional exhibit addressed to such grade-level issue. On the outside employment deduction matter, however, the commissioner specifically noted for the record the agreement and understanding of all concerned that "we would not leave the case open on this outside earnings issue," to which defendant's counsel specifically assented. [Tr. at 118]

9. Def. Requested Findings at 3.

10. Such exhibits show that plaintiff sought employment with the Army Corps of Engineers Map Service, the U.S. Naval Hospital at Oakland, California, the Aero-

5. From plaintiff's back pay award of $68,300.80, the amount of $4,-439.97 should be credited, as plaintiff's contribution to his Civil Service Retirement Fund account, and the amount of $457.25 should be credited, as plaintiff's contribution, to his Federal Employees' Group Life Insurance Act account. There apparently is no dispute about such credits in such amounts.

6. At the time he was separated, plaintiff was paid the amount of $983.06 as a lump sum leave payment. Such amount should also be deducted from plaintiff's back pay award, and the leave for which the payment was made credited back to plaintiff's account. Ainsworth v. United States, *supra*, 399 F.2d at 185, 185 Ct.Cl. at 125.

In summary, plaintiff is entitled to a judgment in the amount of $68,300.80 as back salary, plus $15,684.90 as living quarters allowances not paid, plus $645.-54 as living quarters allowances paid but erroneously recouped by deductions from plaintiff's salary, making a total recovery of $84,631.24, less $30,483.85 representing plaintiff's outside earnings and less $983.06 representing a reimbursement to the Government of the lump sum leave payment made to plaintiff at the time of his separation, or the net sum of $53,164.33, of which $4,439.97 should be credited to plaintiff's Civil Service Retirement Fund account and $457.25 to plaintiff's Federal Employees' Group Life Insurance account, the balance of $48,267.11 to be paid to plaintiff.[11]

nautical Chart and Information Center of the Air Force; the Army Corps of Engineers at Chitose, Japan, the Department of the Interior's Bureau of Indian Affairs at Phoenix, Arizona, and the Reynolds Electric and Engineering Company at Santa Fe, New Mexico, and Las Vegas, Nevada.

11. Principally because defendant would deny to plaintiff any recovery of back salary for the years 1962 and 1963, as well as substantially all of the living quarters allowances during the entire period involved, and would also effect the alleged outside earnings deduction for 1961, it arrives at the figure of $8,991.80 as the amount to be paid to plaintiff.

As stated, plaintiff offers no such specific figure. He simply asks that the matter again be referred to the General Accounting Office for a computation based on the GS-13 grade level to which he contends he is entitled. Plaintiff's previous Motion for Call on such Office gave no inkling that he was claiming back pay at such level. It only requested a computation of his earnings "had he not been removed from his position as a civilian employee in the Department of the Air Force."