**Daniel S. URBINA**

v.

**The UNITED STATES.**

No. 443–74.

United States Court of Claims.

March 17, 1976.

Gilbert D. Lopez, pro se.

Raymond B. Benzinger, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before SKELTON, NICHOLS and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge:

This case marks the second appearance before this court of Daniel S. Urbina. In the first *Urbina* case, it was held that the plaintiff had been illegally separated from his position with the Department of the Air Force (180 Ct.Cl. 194 (1967) ). Plaintiff's motion for summary judgment was granted, with the amount of recovery due to lost wages to be subsequently determined. Such determination was made in which plaintiff recovered a total of $48,267.11 as back salary, resulting from plaintiff's having been off the payroll from October 16, 1961, through May 14, 1967 (428 F.2d 1280, 192 Ct.Cl. 875 (1970) ). Now, plaintiff seeks lost salary due to a second removal from his job, which is unrelated to the first discharge. Plaintiff's petition does not request reinstatement to his former position. After considering the pleadings, the briefs, and argument, we grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

Plaintiff complains of two adverse actions taken against him by his employer, the Department of the Air Force. The first action terminated plaintiff's saved-rate of pay status when, on October 17, 1971, plaintiff was reassigned from Mechanical Engineer, GS–12, to a similar position in the same grade in a different organizational unit at the 15th Civil Engineering Squadron at Hickam Air Force Base, Hawaii. Plaintiff was being paid at a special, higher rate in the former job. Although Civil Service Commission regulations require termination of the employee's special salary rate at the time of reassignment, such action was not taken and his pay was not reduced. It is undisputed that when plaintiff was first transferred on October 17, 1971, adverse action procedures were not observed. Plaintiff did not receive 30 days' advance notice of the transfer, which was required by 5 C.F.R. § 752.202 (1971), since there was also supposed to be a reduction in pay. A reduction in pay is an adverse action. The reassignment was effective in all respects except that it did not effectively reduce plaintiff's pay as of October 17, 1971. Since personnel actions accomplished in violation of regulations are void under *Service v. Dulles,* 354 U.S.

363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), plaintiff's first reassignment on October 17, 1971, was ineffective and invalid. Some two years later, on July 18, 1973, the agency issued a notice of reinstatement restoring plaintiff to his former position, canceling the October 17, 1971, reassignment, and at the same time reassigning him again and informing plaintiff that his compensation would be thereafter reduced. By letter of August 15, 1973, defendant notified plaintiff that his saved-rate salary of $22,187 would be discontinued and reduced to $21,686, effective August 19, 1973. (The excessive pay received by plaintiff after his first reassignment is the subject of a counterclaim by defendant, to be discussed below.) Plaintiff claims that he was unfairly treated in this reassignment action and contests the reassignment and reduction in pay.

Secondly, in his main contention, plaintiff complains about his subsequent removal described below. The facts show that plaintiff requested and was granted sick leave on Friday, September 7, 1973, for the following Monday, September 10. He did not return to work on September 11th, and in fact never returned to work at all. He made no effort to explain his absence from his job until September 20, 1973, when an employee of the agency contacted him by telephone at his residence. In the ensuing conversation, plaintiff told the employee that he thought he had been granted an "indefinite" sick leave to have his broken eyeglasses repaired. The first time that plaintiff contacted the agency was on September 24 when he stated by telephone that he still did not have his eyeglasses. On October 14, plaintiff mailed a letter to the agency stating that he got his repaired eyeglasses on October 3, but that he was still unable to work because of an injured leg. He enclosed a letter from Dr. William Gulledge with respect to his examination of plaintiff's leg on September 28, which plaintiff submitted as evidence of his incapacity. However, Dr. Gulledge testified at the hearing before the Civil Service Commission, as related in the CSC opinion:

* * * Dr. Gulledge testified that on September 28 Mr. Urbina was not physically unable to return to work after the visit and that his (Dr. Gulledge's) records indicated he could "continue * * * light work" as of September 28, although appellant had possession of a form report of the visit showing the patient's work status as "off" under the block designated "date patient may return to work."

On October 19, 1973, while plaintiff was still absent from work without leave, the agency issued a notice of proposed removal to him of that date proposing to remove him from his job, stating specifically and in detail the reasons for the proposed action, including "your unauthorized absence since 11 Sep. 73 and your disregard to instructions for requested leave." This notice was delivered to plaintiff's residence on October 30, 1973, as he was still absent from work and the notice could not be delivered to him in person on the job. On that date, plaintiff had been AWOL for 50 days.

Plaintiff requested an extension of time to reply to the charge, and he was granted such extension until November 19, 1973. He submitted written replies dated November 9 and 19, 1973, in which he claimed that leave had been approved in advance on September 10, 1973, so he could obtain eyeglasses, and that he had been incapacitated for work. On December 6, 1973, the agency issued its notice of removal, effective December 14, 1973, on which date plaintiff had been AWOL for 94 days. The plaintiff appealed both the removal and reduction of pay to the CSC, which, after a hearing, sustained both actions. The plaintiff then appealed to the Appeals and Review Board, which also sustained both actions. Thereafter, plaintiff filed this suit for back pay at the higher rate from the date of his removal to the present time.

■ This court has specifically delineated its authority to review administrative actions. Such review is normally to determine (1) whether there has been substantial compliance with statutory

and implementing regulatory requirements; (2) whether there has been any arbitrary or capricious action on the part of the government officials; and (3) whether there was substantial evidence for the decision. *Peters v. United States,* 187 Ct.Cl. 63, 408 F.2d 719 (1969); *Harrington v. United States,* 174 Ct.Cl. 1110 (1966); *Powers v. United States,* 169 Ct.Cl. 626 (1965); *Greenway v. United States,* 163 Ct.Cl. 72 (1963).

■■ As to plaintiff's reassignments, such actions were not reductions in grade, and no reduction in force occurred. Agencies have wide discretion in effecting reassignments of their personnel. *Comberiate v. United States,* 203 Ct.Cl. 285, 288 (1973); *Urbina v. United States,* 428 F.2d 1280, 1283–84, 192 Ct.Cl. 875, 880–81 (1970); *Burton v. United States,* 404 F.2d 365, 369–70, 186 Ct.Cl. 172, 180 (1968), *cert. denied,* 394 U.S. 1002, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969). A reduction in force necessarily includes the release from government service of competing employees. 5 U.S.C. § 3502 (1970). There has been no allegation or proof of competition for positions due to reductions in force at any stage in this controversy. Certainly there was substantial compliance with statutory and regulatory requirements on this point. The decision of the regional office of the CSC on plaintiff's reduction in compensation claim relates that the relevant facts surrounding the controversy are not contested. The decision correctly finds that the reduction was mandated by law and that the proper procedures were followed by the agency. The decision also notes that because no other similar position was available, plaintiff was not entitled to assignment to another saved-rate position. The decision was neither arbitrary nor capricious and was supported by substantial evidence.

■ The decision to remove Mr. Urbina was likewise neither arbitrary nor capricious, and was supported by substantial evidence. Plaintiff has never denied his long absence from work, but rather has relied on his contention that he was entitled to such leave, based upon his own judgment, without regard to management's authority and responsibility to grant or approve sick leave. Plaintiff was not a new employee, but had been in government service for 20 years. It can be assumed that after serving 20 years as a Government employee, the plaintiff had knowledge of the rules governing sick leave. In any event, it is obvious that if all employees of the Government could decide when and how long they could have sick leave without any advance approval by proper officials of the hundreds of agencies and departments by whom they are employed, we would have chaos in our Government. Such unilateral action by an employee cannot be tolerated. The following statement of the Appeals Review Board is significant:

> With respect to the merits of the removal action, the Board concurs in the Region's finding that the appellant's September 10, 1973 request for sick leave was for one day only; and that the appellant made no attempt to contact the agency to request additional sick leave until after he was first contacted by the agency on September 20, 1973. It is evident from the record that the appellant was aware of the fact that he was being carried as AWOL following his conversation with agency personnel on September 20, 1973. In view of the fact that the agency never approved the appellant's absence beginning on September 11, 1973; that the reason for his absence from September 11 through October 3, 1973 was within his control and that he could have returned to work in a light duty status on October 4, 1973, the Board finds that the reasons for the appellant's removal are supported by the substantial evidence of record. The Board further finds that the appellant's removal based upon the two sustained charges was warranted and for such cause as will promote the efficiency of the service.

■ The Government has filed a counterclaim for the excess salary paid to

plaintiff after he was first reassigned from the saved-rate position and his salary was not reduced at the same time. We hold that the Government is not entitled to recover on such counterclaim. Plaintiff was paid at the higher rate for almost two years, and, finally such reassignment was cancelled and he was restored to his former position and salary, although for only a short period of time before he was again reassigned at the reduced salary. We conclude that such cancellation and restoration nullified the claim that the Government asserts in its counterclaim.

For all the reasons set forth above, it is clear that the Government was completely justified in terminating plaintiff's special pay rate and in removing him from his job. We hold that there has been substantial compliance with statutory and regulatory requirements; that the decisions of the Government officials were neither arbitrary nor capricious; and that there was substantial evidence supporting their decisions relating to Mr. Urbina. Accordingly, we grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment and dismiss plaintiff's petition. Defendant's counterclaim is denied.