per curiam:
This case comes before the court under somewhat unusual procedural circumstances. On April 21, 1980, the defendant filed a statement with the trial judge to the effect that there were no material facts which the defendant deemed to be in dispute; defendant conceded that the case turns on novel questions of law. The trial judge treated this statement as the equivalent of a stipulation of facts under Rule 134(b)(2); returned the case to the court, and directed the parties to file briefs and statements of undisputed facts. Plaintiffs have filed a brief and an appendix which they regard as a statement of undisputed facts. Defendant has also filed its brief, stating that it does not agree that the statement it filed with the trial judge is equivalent to a stipulation of facts under Rule 134(b)(2). However, in its answer, defendant has admitted all of the facts which we find material to the disposition of the case. *691 Therefore, we shall decide the case in the same way as if the material facts had been stipulated.
I
At all times relevant to this case, plaintiffs were special agents of the Bureau of Narcotics and Dangerous Drugs of the United States Department of Justice. In April 1973, plaintiffs were assigned as members of the St. Louis office for Drug Abuse Law Enforcement (DALE), an agency of the Department of Justice which was formed to investigate and curtail large-scale illegal narcotic traffic in and around the St. Louis metropolitan area. They were indicted for various civil rights violations arising out of allegations that they had abused and terrorized inhabitants of various houses they had entered without warrants as a result of mistaken identifications. The agents were prosecuted by Special Prosecutors from the Civil Rights Division of the Department of Justice and acquitted. They brought this suit to recover the sum of $700,000 as attorneys fees allegedly incurred in their defense against the criminal charges.
In 1973, while they were acting reasonably, in good faith, and in the course of their official duties, they made several warrantless entries in private homes in and around Collins-ville, Illinois, in search of suspected narcotics dealers and traffickers of illegal drugs. After the entries, the "victims of the raids” directed deliberate defamations at the plaintiffs. The views of the "victims” were widely disseminated in both local and national news media, where the agents’ actions were generally characterized as "the Collinsville raids.”
As a result of the atmosphere created by the local and national publicity, political pressure was exerted upon the Department of Justice to take action against plaintiffs. Thereafter, a Federal grand jury returned a multi-count indictment against plaintiffs, charging them with conspiracy, substantial civil rights violations, perjury and obstruction of justice. In addition, two separate civil actions were brought against plaintiffs, alleging that they had violated the constitutional and civil rights of the parties whose homes were entered by the plaintiffs. In April 1974, after a *692 5-week jury trial, plaintiffs were each acquitted of all criminal charges by a jury in the United States District Court, Southern District of Illinois, in Alton, Illinois.
After the jury had acquitted plaintiffs on all counts in the criminal case, an attorney from the Office of the Special Litigation Counsel, Civil Division, Department of Justice, was assigned to represent them in the civil actions. Following separate jury trials, plaintiffs were fully exonerated of all charges of misconduct and wrongdoing in the two civil suits, and they also recovered damages on their counterclaims for libel and defamation.
II
The issues to be decided are raised by two contentions made by plaintiffs. The first is that since they acted reasonably and in good faith in the performance of their duties at the direction of their employer, there is an implied contract between the United States and these narcotic agents to reimburse them for the expenses they incurred in the defense of the criminal prosecution against them. Secondly, they argue that published Department of Justice regulations, which provide for departmental representation of Federal employees, or representation by private counsel, constitute an implied contract to indemnify the agents for expenses that they incurred in the criminal case. These contentions must be rejected.
The court has recently held that it does not have jurisdiction on an implied contract theory over breach of an agreement by a federal prosecutor to grant immunity from prosecution to the plaintiff, a witness. Plaintiff, ultimately obtained dismissal of the indictment against him, but at a cost of $42,000 for attorney’s fees. Kania v. United States, 227 Ct. Cl. 458, 650 F.2d 264, cert. denied, 454 U.S. 895 (1981). The discussion in Part IV of that decision shows that Tucker Act contract liability does not extend to agreements, even if express, relating to the conduct of criminal trials, unless their terms show that the parties intended to create a contract-type liability. The reason is that supervision of criminal cases presumptively and properly belongs to the criminal courts. The Tucker Act was intended to deal *693 primarily with instances where the sovereign steps into the market place to procure goods, lands, and services — transactions that private parties engage in between themselves. We also held that the rights of civilian and military employees against the government likewise do not involve contract rights, unless a contract is specifically spelled out. Although Kania was not a federal employee, the possibility that he might have been was thus specifically discussed. Therefore, the holding is, as to jurisdiction, applicable to the case at bar.
In Ryan v. United States, 227 Ct.Cl. 771 (1981), the court denied the claim of a Department of Justice employee who sued to recover attorneys fees incurred in preparation for his appearance before a grand jury. As the court pointed out in that decision, "it has long been settled that public employment does not give rise to a contractual relationship in the conventional sense.” Butler v. Pennsylvania, 51 U.S. (10 How.) 402 (1850); Urbina v. United States, 192 Ct. Cl. 875, 881, 428 F.2d 1280, 1284 (1970). Moreover, it has been held by the Supreme Court, and repeatedly by this court, that before a contract may be implied in fact, there must be a meeting of the minds which is inferred from the conduct of the parties, and in the light of the surrounding circumstances, shows their tacit understanding. Baltimore and Ohio R.R. v. United States, 261 U.S. 592 (1923), Somali Development Bank v. United States, 205 Ct. Cl. 741, 751, 508 F.2d 817, 822 (1974).
As previously stated, the plaintiffs were prosecuted at the instance of the Department of Justice by attorneys who were especially assigned from the Civil Rights Division of the Department. Obviously, there was no meeting of the minds to reimburse plaintiffs for the claimed expenses in a situation where the interests of the Department of Justice in prosecuting the case, and the interests of plaintiffs in defending it, were in direct conflict.
Moreover, the regulations relied on by plaintiffs provide no basis for an implied contract, because these regulations expressly negate any liability to reimburse plaintiffs for the expenses here claimed. The regulations consist of Attorney General Levi’s statement of policy which has been codified in 28 C.F.R. §§50.15 and 50.16. The regulations detail the *694 circumstances under which the Department of Justice may represent Federal employees and may also retain private counsel for them at Federal expense in certain instances. Representation of Federal employees by the Department of Justice attorneys or by private counsel is limited to state criminal proceedings and to civil proceedings and Congressional proceedings in which Federal employees are sued or subpoenaed in their individual capacities. The regulations expressly provide that representation by Department of Justice attorneys is not available to a Federal employee whenever the representation is requested in connection with a Federal criminal proceeding in which the employee is a defendant. The reasons for the Department policy as stated in the regulations is well expressed in a memorandum provided by the Office of Legal Counsel, Department of Justice, to the Assistant Attorney General of the Civil Division. The memorandum[1] states in part:
* * * The United States has two interests in defending employees sued by private persons for acts in the course of their employment. First, it establishes the legality of the way they performed their duties. Second, it promotes vigorous performance of duty by relieving employees of the burden of defending the suits. Both serve the Government’s general interest in the unimpeded performance of its functions. These interests justify the use of Department personnel to defend the employees.
% sH j}: sf: sfc
* ■* * In federal criminal matters, on the other hand, its interest is to detect and prosecute violations of the federal criminal law. See 28 U.S.C. §§516, 533, 547. It does not directly defend employees whom it is investigating or prosecuting at the same time. In a federal criminal proceeding involving a federal employee, the Department’s interest is not in defending the legality of the conduct but rather the reverse. Similarly, its interest is in deterring federal employees from criminal violations under color of office, not in relieving them of the fear of being prosecuted for them. Unlike the private civil suit, the Department is not defending the Government by defending the employee in the criminal case. It could not directly defend those persons it investigates or prose *695 cutes, and it therefore has no authority to retain private counsel to do so indirectly. (Footnotes omitted.)
There is no doubt that plaintiffs acted reasonably, in good faith, and in the scope of their employment in committing the acts which resulted in the false accusations against them, in the extensive and unfavorable publicity, and finally in the indictments and criminal prosecution. To put it mildly, they have been treated badly, and if we were empowered to render judgment in accordance with the dictates of natural justice, they would probably be awarded a substantial sum of money. Unfortunately for plaintiffs’ case, however, we are a court of limited jurisdiction. We find that there is no statute, regulation, contract or other ground upon which liability of the government on their claim can be predicated. Accordingly, their petition must be dismissed; it is so ordered.

 A copy of this memorandum is attached to defendant’s brief as Exhibit 4.