**MICROBIX BIOSYSTEMS, INC., Plaintiff,**

v.

**BIOWHITTAKER, INC., et al., Defendants.**

**Abbott Laboratories, Counterclaimant,**

v.

**Microbix Biosystems, Inc., Counterclaim–Defendant.**

**No. CIV.A.MJG–97–2525.**

United States District Court, D. Maryland.

Aug. 22, 2000.

Joseph D. Edmondson, Jr., J. Mark Waxman, John P. Isacson, Foley and Lardner, Daniel A. Small, Michael D. Hausfeld, Matthew F. Pawa, Cohen, Milstein, Hausfeld & Toll, Agnieszka Fryszman, Law Office, Ann C. Yahner, Law Office, Washington, DC, for Microbix Biosystems, Inc.

John Henry Lewin, Jr., Maria F. Howell, Jennifer M. Horn, Venable Baetjer and Howard LLP, Baltimore, MD, Peter Thauer, East Rutherford, NJ, for BioWhittaker, Inc. and BioWhittaker Holdings, Inc.

Robert P. Schlenger, Lord and Whip PA, Baltimore, MD, David M. Rosenzweig, Munger Tolles & Olson, Jeffrey I. Weinberger, Munger Tolles & Olson, LLP, Los Angeles, CA, Kenneth D. Greisman, Nicholas A. Poulos, Abbott Laboratories, Abbott Park, IL, Peter Thauer, East Rutherford, NJ, for Abbott Laboratories.

## MEMORANDUM AND ORDER

GARBIS, District Judge.

The Court has before it Plaintiff's Motion for Reconsideration of Summary Judgment and the materials submitted relating thereto. The Court finds a hearing unnecessary.

On December 21, 1999, Defendants Abbott Laboratories ("Abbott"), BioWhittaker, Inc. and BioWhittaker Holdings, Inc. (collectively "BioWhittaker") moved for summary judgment on the antitrust claims brought by Plaintiff Microbix Biosystems, Inc. ("Microbix"). By Order dated March 28, 2000, this Court granted summary judgment on the antitrust claims, and further dismissed the substantively identical common law claim of tortious interference with economic relationships on the ground that the antitrust claims were not viable. Plaintiff now moves the Court to reconsider its March 28 Order. In addition, Plaintiff requests that certain changes be made to the separate March 28, 2000 Memorandum and Order Re Counterclaims in which the Court granted summary judgment to Microbix on the theft of trade secrets claim.

## I. MOTION FOR RECONSIDERATION

### A. Legal Standard

A motion for reconsideration is granted only in limited circumstances. As stated by Judge Ramsey in *Weyerhaeuser Corp. v. Koppers Co., Inc.*:

> A motion for reconsideration (or, to alter or amend judgment) made pursuant to Fed.R.Civ.P. 59(e) may be made for one of three reasons: (1) an intervening change in the controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or prevent manifest injustice.

771 F.Supp. 1406, 1419 (D.Md.1991) (citation omitted). Such a motion "cannot be used to raise arguments which could, and should, have been made before [the determination to be reconsidered] issued." *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986) (citation omitted).

### B. The Antitrust Claim

The Court previously granted Defendants summary judgment on the antitrust claims on the ground that Microbix, as Plaintiff and the party opposing summary judgment, failed to present evidence suffi-

cient to create a genuine dispute of material facts for trial.[1]

In the Motion for Reconsideration, Plaintiff argues that there was evidence creating a genuine dispute of material facts for trial and that the Court impermissibly preferred the Defendants' version of the facts over that of Plaintiff. To support this argument, Plaintiff (1) merely reargues the facts and theories already ruled upon by the Court and (2) seeks to present new evidence[2] to generate a dispute of material fact for trial. Because the Motion for Reconsideration essentially reargues the issues already addressed sufficiently by the Court's March 28 Order, the Court need not discuss these issues. Nevertheless, the Court shall clarify some of Plaintiff's apparent misunderstandings concerning the Court's March 28 Order and the relevant legal standards, especially as they relate to the element of causation.

 As a preliminary matter, the Court notes that in the antitrust context, Plaintiff must establish, *inter alia*, the fact of damages with a "fair degree of certainty." *See* March 28 Order at 37. More-

over, Plaintiff has the burden of proving that the alleged illegal conduct was "a *substantial or materially* contributing factor" in its injury. *Id.* at 44. While the conduct that caused the Plaintiff's injury can be proven either by direct evidence or on the basis of circumstantial evidence and inference, evidence that is merely speculative[3] will not satisfy this burden. *Id.* at 44.

Viewing the "evidence" presented by Plaintiff in light of these relevant standards, the Court previously concluded:

> Plaintiff has not presented evidence, other than conclusory allegations, that the lack of a long-term supply of HNK cells was a *material* cause of Gensia's termination decision. At best, the evidence presented by Plaintiff shows that the exclusive agreement was one of the many factors—but not a substantial factor—contributing to Gensia's termination decision. Indeed, the evidence does not permit a finding that Gensia would have remained in the partnership even though confronted by (1) the FDA [Food and Drug Administration] ban,[4]

---

1. It is well-settled that Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The record in this case, viewed in the light most favorable to Plaintiff, did not permit a reasonable fact finder to conclude that Defendants' conduct directly caused the damages allegedly incurred by Microbix.

2. By separate Memorandum and Order, the Court has stricken the "new evidence" on the ground that Plaintiff fails to offer any legiti-

mate justifications for not presenting the evidence before summary judgment.

3. Contrary to Plaintiff's argument, not every factual dispute between the parties will prevent summary judgment; the disputed facts must be *material* and must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. To withstand summary judgment, Plaintiff cannot rely upon speculation, but must present *specific facts* on each element of its case showing that there is a *genuine* issue of fact. As the Supreme Court stated in *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

4. For example, it is undisputed that the FDA banned the import of human neonatal kidney

(2) Gensia's unwillingness to make the financial commitments that Microbix requested, (3) the closure of the Cali, Colombia cell source, and (4) Microbix's failure to enter into a partnership with a manufacturing facility.

March 29 Order at 39–40 (footnote in original). Plaintiff contends that this conclusion was factually unsupported because "Microbix produced ample evidence that Gensia terminated its partnership with Microbix due to the exclusive supply agreement." Pl's Mot. for Recon. at 11–12. Specifically, Plaintiff argues that because Gensia did not have knowledge of the intervening events (e.g., the FDA ban), the events could not have caused Gensia to terminate the partnership. This argument is based upon an apparent misconception that Gensia's knowledge of the independent intervening events was critical.

In the Court's view, it is irrelevant what Gensia knew or did not know at the time it terminated the partnership with Microbix. Thus, the relevant inquiry before the Court was whether Gensia would have remained in the partnership with Microbix if Gensia *eventually* were confronted with the other intervening events that independently shut off the supply of HNK cells. Plaintiff, the party with the burden of proof, must introduce evidence that Gensia would have remained in the partnership in spite of the independent intervening causes. Because the evidence presented by Plaintiff concerning this issue was speculative at best, permitting the case to go to the jury would contravene Rule 56's gatekeeping policy.

■ Similarly, Microbix apparently misinterprets the example provided by the Court to illustrate the speculative nature of Plaintiff's evidence in footnote 63 of the March 28 Order, which stated:

> For example, it is undisputed that the FDA banned the import of HNK cells on September 18, 1998, and that Gensia terminated its partnership with Microbix after the ban, in November of 1998. In the absence of contrary evidence, a reasonable inference could be made that the FDA ban was a substantial factor contributing to the lack of long-term supply of HNK cells, which materially caused Gensia to end the partnership.

March 29, 2000 Order at 39–40 n. 63. Plaintiff argues that this inference was impermissible because Gensia's knowledge of the FDA ban post-dated the Gensia–Microbix partnership termination. This argument completely misses the mark. In reaching the above conclusion, the Court considered it irrelevant whether Gensia knew of the FDA ban before terminating the partnership or thereafter. Regardless of whether Gensia knew of the FDA ban, the ban occurred *prior to* November of 1998, when Gensia terminated the partnership. Therefore, the FDA ban *independently* caused the lack of HNK-cell supply, presumably as of September 1998 when the ban took effect. Absent contrary evidence, this ban would be found to have contributed materially to the lack of HNK cells. In turn, the *lack of HNK cells* (not Gensia's awareness of the FDA ban) *would have been* a material cause for Gensia to terminate the partnership. By providing the above example, the Court did not intend to pinpoint the actual cause of Gensia's decision to terminate the partnership. Rather, the court simply underscored the difficulty with the speculativeness of Plaintiff's causation claims.

---

cells on September 18, 1998, and that Gensia terminated its partnership with Microbix after the ban, in November of 1998. In the absence of contrary evidence, a reasonable in-

ference could be made that the FDA ban was a substantial factor contributing to the lack of long-term supply of HNK cells, which materially caused Gensia to end the partnership.

Plaintiff also argues that the Defendants' illegal conduct materially caused Gensia to terminate the Gensia–Microbix partnership because "Gensia's unwillingness to make the financial commitments was inextricably linked with the increased risk profile of the project due to the exclusive supply agreement." Mot. for Recon. at 14. To support this argument, Plaintiff cites to the notes of Gensia Chief Financial Officer John Sayward, who allegedly wrote that "[Gensia] need secure source of cells.... Need resolution before we can risk this type of investment." *Id.* (citation omitted). However, this statement (made by Sayward on April 17, 1998) expressed Gensia's concerns *prior to* the Court's granting of the preliminary injunction on May 13, 1998. According to the testimony of Thomas Speace ("Speace") of Gensia, both Gensia and Microbix were satisfied with the preliminary injunction. Thus, Gensia terminated the partnership *in spite of* its apparent satisfaction with the preliminary injunction. Plaintiff, as the party having the burden of proof at trial, presented no evidence sufficient to negate the other possible causes for Gensia's decision to terminate the partnership. In view of the speculative "evidence" presented by Plaintiff, no reasonable fact finder could conclude that the exclusive supply agreement was the *material* cause of Gensia's termination decision.

Plaintiff contends, desperately, that the Court favored the Defendants' interpretation of Speace's testimony concerning Gensia's satisfaction with the May 13, 1998 preliminary injunction. Specifically, Plaintiff argues that although Speace testified initially that Gensia was satisfied with the preliminary injunction, he later stated that "[Gensia was] *less than satisfactory* [with the preliminary injunction], since [Gensia] did not have a continued source of cells to be able to conduct marketing throughout the period that we believed we could be active in the marketplace." According to

Plaintiff, this conflicting testimony alone is sufficient to create a genuine dispute of material fact for trial. By making this argument, however, Plaintiff completely ignores the context in which Speace's statement was made. Before Speace made the "less than satisfactory" statement, Defendants' counsel asked him:

Q. Was the termination of the agreement with Microbix caused in any way, from Gensia's point of view, by the cell supply situation?

A. It *may have contributed to, but I don't believe it was solely responsible.*

Speace Dep. at 397. Moreover, after Speace made the "less than satisfactory" statement, Defendants' counsel attempted to have Speace clarify the statement by asking

Q. Did you [Speace] testify in direct examination, when I questioned you Monday, that after the preliminary injunction the cell supply source was satisfactory in the sense that there were three years' supply going to be available after commercial launch?

\* \* \* \* \* \*

A. *It permitted us to enter the marketplace.* And our specific plans were to develop, if possible, a secondary cell supply source to be able to qualify with the FDA and continue marketing.

*Id.* at 397–98 (emphasis added). Speace never testified that the lack of long-term supply of HNK cells was the only cause, much less a *material* cause, of the Gensia–Microbix partnership termination. Thus, Speace's "less than satisfactory" statement cannot be read out of context to support Plaintiff's contention that the lack of long-term supply of HNK cells was a *material* cause of the Gensia–Microbix partnership termination. Speace's statement, read in the light most favorable to Plaintiff, implied no more than that Gensia was "less

than satisfactory" with the preliminary injunction, in the sense that from a business perspective Gensia would have preferred to have a permanent, guaranteed source of HNK cell supply. Viewing the statement cited by Plaintiff in context, no reasonable jury could conclude that the supply agreement was a *material or substantial* cause of Gensia's termination agreement.

In sum, the Court's March 28 Order sufficiently addressed the arguments contained in the Motion for Reconsideration. For reasons set forth in the March 28 Order, the Court granted summary judgment on the antitrust claims. The Motion for Reconsideration presents no persuasive reason for the Court to change its view concerning the antitrust claims. Accordingly, the Motion for Reconsideration shall be denied with respect to the antitrust claims.

### C. *The Interference With Economic Relationship Claim*

■ On March 28, 2000, the Court dismissed Microbix's state law claim of interference with economic relationships against Defendants on the basis that the claim "stands and falls along with the federal antitrust claims." *See* March 28, 2000 Memorandum and Order Re Plaintiff's Claims. Because Plaintiff's antitrust claims were insufficient to withstand summary judgment, the state law claim was dismissed. *Id.* at 50.

Microbix argues that the state law claim should not be dismissed because (1) under the *lex loci delicti* doctrine Maryland courts would apply the substantive law of Ontario, Canada to resolve the claim and (2) Canadian law does not require Microbix to prove that the alleged wrongful conduct supporting the interference claim

was a material cause of injury. This argument is unpersuasive.

First, the Court originally concluded that under Maryland law, the failure of Microbix's antitrust claims necessarily precluded recovery on the interference claim. *See id.; see also* Feb. 14, 2000 Letter to Counsel. Throughout the course of this litigation, Microbix never informed the Court of its intention to apply the law of Ontario, Canada pursuant to Rule 44.1 of the Federal Rules of Civil Procedure ("Rule 44.1"). Rule 44.1 requires that a "party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable notice." Given the Court's clear intent to apply Maryland law, Microbix's failure to give notice of its intent to rely upon Ontario law was unreasonable and, therefore, shall not be permitted.

■ Plaintiff argues that it did not give such notice because it did not have an opportunity to show cause why the interference claim should not be dismissed. This argument is unpersuasive. By considering Microbix's arguments concerning why the interference claim should not be dismissed in the instant motion, the Court, in effect, has afforded Plaintiff an opportunity to be heard.[5] However, in view of the Court's clear intent to apply Maryland law, the fact that Plaintiff had not presented its arguments with respect to the interference claim does not excuse Plaintiff's failure to give notice of its intent to rely upon foreign law. Accordingly, the Court shall not apply the foreign law as requested by Plaintiff.

■ Even if Ontario law were applied, the Court nevertheless would conclude that both causation and damages must be

---

**5.** Contrary to Plaintiff's suggestion, an opportunity to be heard does not always require a hearing. It is, for example, well-settled that motions to dismiss or for summary judgment can be resolved without requiring a hearing.

proven in order for Plaintiff to recover. That is, to recover for tortious interference under Ontario law, Plaintiff must establish that defendant caused the damages by "unlawful means." Finkelstein Decl. ¶ 7. Microbix has not presented any authorities that under Ontario law, a Canadian court would treat violation of a foreign statute (such as the Sherman Act) as "unlawful" for purposes of an interference tort claim. *Id.* ¶¶ 8–12. Nor has Microbix contended that it could satisfy the "unlawful means" element of the Canadian interference tort through proof that the conduct alleged is "unlawful" under *Canadian* antitrust law. Thus, even if Ontario law were applied, the interference with economic relationships claim nevertheless would be dismissed.

In sum, the Motion for Reconsideration shall be denied with respect to the interference with economic relationships claim.

## II. *Requested Changes to the Memorandum and Order Re Counterclaims*

Plaintiff contends that in the Court's opinion concerning summary judgment on the counterclaim for alleged theft of trade secrets, the Court made several errors. According to Plaintiff, the "most significant" error appears on page 17 of the opinion, where the Court stated that "Microbix never produced its planned product and, on the evidence, has no reasonable prospect for doing so in the future." The other errors included an incorrect citation to an exhibit in a footnote and an incorrect identification of "Dr. Long" as Abbott's expert.

The Court finds it unnecessary to amend its March 28, 2000 opinion. First, contrary to Plaintiff's argument, the alleged "most significant" error being sought to be corrected was factually supported. The undisputed fact was that Microbix had never produced urokinase for sale in the United States and had no mechanisms in place (e.g., no federally qualified source of human kidney cells) for producing and marketing urokinase in the United States. Based upon these particular circumstances, the Court concluded that Plaintiff had no "*reasonable* prospect" of producing commercial urokinase for sale. Because this statement was factually supported, it need not be modified. Moreover, the other two trivial clerical errors identified by Plaintiff do not affect the outcome of the judgment and, therefore, need not be corrected.

In sum, the Court concludes that modification of the March 28 Memorandum and Order Re Counterclaims would serve no *useful purpose.* Accordingly, the requested changes shall be denied.

## III. *CONCLUSION*

For the foregoing reasons:

(1) Plaintiff Microbix Biosystems, Inc's Motion for Reconsideration of Summary Judgment is DENIED.

(2) The Judgment Order issued on March 28, 2000 herein remains in effect.