### Rickey MEDLOCK

v.

### Donald H. RUMSFELD

### No. CIV.A.DKC 2002–1093.

United States District Court,
D. Maryland.

Dec. 31, 2002.

Order Denying Reconsideration
April 4, 2003.

---

Dawn Valore Martin, Law Offices of Dawn V. Martin, Washington, DC, for Plaintiff.

Kristine L. Sendek Smith, Office of the United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII") and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701–797 ("Rehabilitation Act"), is the motion to dismiss or for summary judgment of Defendant Donald Rumsfeld, Secretary of the United States Department of Defense ("DOD"). The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the

reasons that follow, the court shall grant the motion.

## I. Background

The following facts are uncontroverted or set forth in the light most favorable to Plaintiff. Plaintiff Rickey Medlock is an African–American male with a chronic facial pain disorder. Plaintiff is currently employed by a private contractor, Chugash Administrative Services, Inc., as an Administrative Assistant IV at the Office of Information Services of the Department of Defense, National Imaging and Mapping Agency ("NIMA"). Plaintiff was previously employed directly by NIMA from January 23, 1997 to March 10, 2001. Plaintiff was initially employed at NIMA as a GS–6 security guard, but his facial condition and associated pain medication made his job as a security guard unworkable. In November 1998, NIMA accommodated Plaintiff pursuant to the Rehabilitation Act by transferring him to Human Resources as a Management and Program Assistant in Pay Band Level 1.[1]

On or about March 22, 1999, approximately six months after Workplace 21 took effect, Human Resources issued a vacancy announcement for two Human Resources Career Intern positions, one of which was a Band 1 position and the other a Band 2 position. Plaintiff applied and was selected for the Band 1 position effective December 5, 1999. Plaintiff alleges that the vacancy announcement for the position he accepted was phrased as a "GS" "career ladder" position as opposed to a Workforce 21 "band" position and did not indicate that promotions from the position were subject to Workforce 21. See Paper no. 9 at 3–4, ex. A. Plaintiff, therefore, believed he was accepting a career ladder position. On or about February 9, 2000, Plaintiff received his fiscal year 1999 performance evaluation, which covered the period from October 1, 1998 to September 30, 1999 during which Plaintiff held the position of HR Management and Program Assistant. He received an overall score of 460, which translated into an overall rating of "4" or "excellent."[2]

During the time Plaintiff worked as a Career Intern, he was never non-competitively promoted. He alleges that two female Career Interns without disabilities, one White and one African–American, were given non-competitive promotions during this time period. The date of hire of these female employees as Career Interns was February 1, 1998, prior to the start of Workforce 21 in October 1998. Another Career Intern, Patricia Briggs, a White female who, like Plaintiff, began after the start of Workforce 21, was not promoted under a career ladder; Plaintiff alleges, however, that she is not an appropriate comparator because she did not want to stay in the HR Department. See id. at 7–8.

In April of 2000, approximately four months after Plaintiff started as an HR Career Intern, HR began the annual fiscal year Workforce 21 competitive promotion

---

1. Prior to October 1, 1998, NIMA used a "career ladder" personnel system similar to the General Schedule (GS) system. Under that system, employees could be promoted through non-competitive, career ladder promotions. On October 1, 1998, NIMA began the phased implementation of a new personnel system, Workforce 21, which essentially ended non-competitive career ladder promotions. Instead, under Workforce 21, employees can only be promoted from one "pay band" to the next through an annual competitive promotion cycle. However, employees who were on career ladders prior to October 1, 1998 were grand fathered and were thus still eligible for non-competitive, career ladder promotions.

2. The rating of "4" is the second highest possible score, with "5" or "superior" as the highest possible score.

process. On April 10, 2000, NIMA issued a Promotion Vacancy Announcement for Human Resources Pay Band 2. Twenty candidates, including Plaintiff, applied for this competitive position (four African–American, sixteen White; one male, nineteen female; five with disabilities, fifteen without disabilities). A promotion panel with nine members was formed to evaluate the competitiveness of the applicants for promotion, with skill narratives counting as 70 percent of the final score and performance counting as 30 percent. Plaintiff's scores ranked him last out of the twenty applicants, which was not sufficient for promotion. Instead, the panel chose the four highest-rated HR applicants for Band 2 promotion, all of whom were White females.[3] The effective date on the Form SF–50 Notice of Personnel Action for the four selected applicants was August 27, 2000. Plaintiff learned of his non-selection on September 14, 2000.

Plaintiff alleges that he received the lowest score of all twenty candidates in part because his supervisor, Bobby Webster, a White male, gave him a very low rating based on discriminatory animus. Plaintiff alleges that the adverse effect of that animus was compounded because Webster sat on the promotion panel that ranked the candidates for promotion overall. Plaintiff alleges that the process used to choose candidates for promotion under Workforce 21 was arbitrary and capricious, rendering promotions subject to nepotism, discriminatory application and abuse. To support this allegation, Plaintiff refers to the fact that the overall numbers ascribed to him by the nine panel members ranged

from four to twelve, out of a possible score of twenty. He argues that the wide range indicates that there could not possibly have been uniform or fair application of objective criteria. Plaintiff further alleges that the chair of the hiring panel, Judy Schiebel, a White female, assisted White female candidates in preparing their applications.

Plaintiff first contacted NIMA's EEO counselor on October 12, 2000, approximately one month after learning of his non-selection for a Band 2 position. At this meeting, Plaintiff alleged that he was discriminated against by NIMA based on race, sex, and disability because management refused to non-competitively promote him even though he was hired as a Career Intern. It does not appear that Plaintiff raised the issue of his non-selection for the competitive promotion during this contact. After no resolution was reached at the informal stage, Plaintiff filed a formal complaint of discrimination on November 17, 2000. The EEO complaint, which was accepted for investigation, alleged that NIMA had discriminated against Plaintiff with regard to *both* non-competitive and competitive promotion. On December 21, 2000, Plaintiff received his performance evaluation for fiscal year 2000, which covered October 1, 1999 through September 30, 2000 and reviewed Plaintiff's performance as an HR Career Intern. Plaintiff received an overall score of 280 points, which translated into an overall rating of "3," or "successful."[4]

On or about April 12, 2001, a Report of Investigation (ROI) was sent to Plaintiff

---

**3.** Two of the four candidates selected had disabilities, including diabetes and pulmonary/respiratory disorder. Plaintiff claims, however, that these disabilities differ from Plaintiff's chronic facial pain disorder because they are not readily apparent.

**4.** The range for an overall rating of "successful" is between 276 and 375 points. If Plaintiff had scored five points less, he would have fallen in the "marginal" overall rating category (range of 200–275 points). Plaintiff alleges that this would have made him subject to a Performance Improvement Plan, or PIP, and would have put him in danger of dismissal.

concerning his EEO complaint, recommending a finding of no discrimination. On December 26, 2001, NIMA issued a Final Agency Decision (FAD) denying all of Plaintiff's claims on the merits. Plaintiff then timely filed a complaint in this court on April 2, 2002. Plaintiff's complaint alleges that his non-selection for the competitive promotion to the Band 2 Human Resources position was due to discrimination based on race, sex, and disability. He asserts both disparate treatment and disparate impact theories for the alleged discrimination. Plaintiff's complaint also alleges that NIMA discriminated against him by denying him a non-competitive promotion during the time he served as a Career Intern. Plaintiff also alleges that NIMA downgraded his performance rating from "excellent" to "successful" in retaliation for filing the EEO charge. Finally, Plaintiff brings a breach of contract claim against NIMA, arguing that NIMA breached its promise to him in the Vacancy Announcement for the Career Intern position to afford Plaintiff a fair opportunity to obtain promotions based on his work performance and skills. On July 1, 2002, Defendant filed a motion to dismiss the complaint pursuant to FED.R.CIV.P. 12(b)(1) or 12(b)(6), or in the alternative for summary judgment pursuant to FED.R.CIV.P. 56.

## II. Standard of Review

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enters. Ltd. v. Air-A-Plane Corp.*, 128 F.3d 855, 860 (4th Cir.1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979).

There are two ways to present a motion to dismiss for lack of subject matter jurisdiction under FED.R.CIV.P. 12(b)(1). *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). A defendant may either contend (1) that the complaint fails to allege facts upon which subject matter can be based, or (2) that the jurisdictional facts alleged in the complaint are untrue. *Id.* If, as in the case now before the court, a defendant raises the first argument, then the allegations in the complaint are assumed to be true, and the court will view the motion as it would one brought under

12(b)(6). *Id.; Higgins v. United States,* 894 F.Supp. 232, 234 (M.D.N.C.1995). However, unlike with a Rule 12(b)(6) motion, the court may consider exhibits outside the pleadings in ruling on a motion pursuant to Rule 12(b)(1) without converting the motion to one for summary judgment. *See Williams v. U.S.,* 50 F.3d 299, 304 (4th Cir.1995) (citing *Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

It is well established that a. motion for summary judgment will be granted only, if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Services Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a· dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e)· therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

### A. Promotion (Non–Competitive and Competitive)

#### 1. Motion to Dismiss

 Before filing a civil action in federal court under Title VII or the Rehabilitation Act, a federal employee is required to exhaust all available administrative remedies. *See* 42 U.S.C. § 2000e–16(c); *Brown v. General Serv. Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Zografov v. V.A. Medical Center,* 779 F.2d 967, 968–69 (4th Cir.1985). Defendant argues that Plaintiff's claim that Defendant discriminated against him by not non-competitively promoting him should be dismissed because Plaintiff did not timely raise this claim with an EEO counselor at the agency level and, thus, has not exhausted his administrative remedies with respect to this claim.[5] Defendant cites to a regulation governing employment discrimination claims brought by federal employees which provides that: "an aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The Fourth Circuit has held that a federal employee's failure to consult with an EEO counselor within the required time period constitutes grounds for dismissing the employee's civil action for failure to exhaust administrative remedies. *See Zografov,*

779 F.2d at 970; *Blount v. Shalala,* 32 F.Supp.2d 339, 341 (D.Md.1999).

In the instant case, it is undisputed that Plaintiff first contacted an EEO counselor regarding not receiving a non-competitive promotion on October 12, 2000. Therefore, the court can only address issues that relate to events alleged to have occurred up to 45 days prior, which is August 28, 2000. Defendant argues that no discriminatory act occurred and no discriminatory personnel action became effective during that time period pertaining to Plaintiff's non-selection for a non-competitive promotion. The effective date of Plaintiff' selection as a Career Intern was December 5, 1999, and Defendant became aware at the latest in March or April of 2000 that he would not be receiving a non-competitive promotion. Plaintiff argues, however, that there was no definitive determination regarding this matter in March or April of 2000 and that there was no adverse action until Plaintiff was actually denied a promotion on September 14, 2000. Plaintiff argues that by initiating contact with an EEO counselor on October 12, 2000, he was, therefore, well within the 45 day period. Defendant argues that the September 14, 2000 notice of non-selection for promotion pertained only to the *competitive* promotion, not the non-competitive promotion, and that the 45 day requirement was therefore not met.

The court disagrees with Defendant's reasoning that the September 14, 2000 no-

---

**5.** Defendant has filed the motion to dismiss under both 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. The Fourth Circuit held in *Zografov* that the plaintiff's failure to consult an EEO counselor should be treated as a simple failure to exhaust administrative remedies, rather than as a lack of subject matter jurisdiction. 779 F.2d at 969, 970. Therefore, the court will likewise treat Defendant's motion as a 12(b)(6) motion for failure to state a claim.

Additionally, the court rejects Plaintiff's argument that Defendant may not raise timeliness arguments at this stage. When a federal employee seeks *de novo* review of his discrimination claims in court, the entire case, including procedural matters, are addressed anew. *See Chandler v. Roudebush,* 425 U.S. 840, 848, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Therefore, the court may analyze *de novo* whether Plaintiff exhausted his administrative remedies.

tice of non-selection does not correlate with the non-competitive promotion. What mattered to Plaintiff was that he did not receive a promotion, whether non-competitive or competitive. Even if Plaintiff had learned earlier that he would not be receiving a non-competitive promotion, he did not suffer a tangible, adverse action until he was denied the competitive non-promotion on September 14, 2000 and, therefore, could not have filed a discrimination complaint until then. Once there was a tangible action about which to complain, he timely initiated contact with an EEO counselor on October 12, 2000 regarding the allegedly discriminatory non-selection.

Defendant further argues that Plaintiff's non-promotion claim should be dismissed because more than 45 days lapsed between Plaintiff's non-selection for the competitive promotion and the date Plaintiff's formal EEO complaint was filed, November 17, 2000. Defendant asserts that the date of Plaintiff's non-selection was August 27, 2000, which was the effective date on the SF–50 Notice of Personnel Action forms of the successful applicants for the promotion, despite the fact that Plaintiff did not learn of his non-selection until September 14, 2000. The Fourth Circuit has held that for the purposes of starting the 45–day time period, the effective date of a non-selection for a position is the effective date on the SF–50 of the person selected for the position. *See Jakubiak v. Perry,* 101 F.3d 23, 27 (4th Cir.1996). However, the court has also noted that federal regulations provide for a waiver of the 45 day limit when a plaintiff shows that he "did not know and reasonably should not have known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(2); *id.* Plaintiff in the instant case did not have access to the SF–50s of the selectees and could not possibly have known that he had not been selected until he received notice of his non-selection on

September 14. Thus, the relevant starting date of the 45 day limit is September 14, not August 27.

■ Defendant asserts that even if September 14, 2000 is the appropriate start date of the 45 day period, Plaintiff still did not timely consult an EEO counselor because he did not raise the issue of the competitive promotion (as opposed to the non-competitive promotion which was raised in the initial September 14 contact) until he filed the formal complaint on November 17, 2000. The court cannot agree. When Plaintiff met with the EEO counselor on October 12, 2000 to discuss what he believed to be discriminatory denial of a promotion, he was not required to specify the type of non-promotion, but merely to allege discrimination with respect to promotion. His discussion with the EEO counselor on October 12, therefore, was sufficient to cover both competitive and non-competitive non-promotion. Plaintiff was therefore well within the 45 day limit when he met with the EEO counselor on October 12, 2000 after having received notice of his non-selection on September 14, 2000. Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies will be denied.

### 2. Motion for Summary Judgment

Defendant has argued in the alternative for summary judgment on Plaintiff's non-promotion claim. Plaintiff asserts that summary judgment is inappropriate at this stage because discovery must be permitted in order to obtain the proof necessary to establish pretext. However, a party opposing summary judgment may not merely assert in his opposition that discovery is necessary. Rather, the party must file an affidavit that "particularly specifies legitimate needs." *Nguyen v. CNA Corp.,* 44 F.3d 234, 242 (4th Cir.1995). Plaintiff has

provided no such affidavit specifically identifying the areas which require discovery. Thus, it is appropriate to consider Defendant's motion for summary judgment at this time.

 Plaintiff has alleged that Defendant discriminated against him in the form of disparate treatment by not promoting him on either a competitive or a non-competitive basis because of his race, sex, and disability.[6] To prove disparate treatment under Title VII and the Rehabilitation Act, Plaintiff must prove discriminatory intent either through direct evidence of discriminatory animus or through indirect evidence. Plaintiff has offered no direct evidence of discriminatory animus, thus this case is properly analyzed under the indirect, burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

 Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. In order to make a *prima facie* case of discrimination in the denial of a promotion, a plaintiff must show that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected under cir-

cumstances giving rise to an inference of discrimination. *See Evans v. Technologies Applications and Serv., Co.*, 80 F.3d 954, 959–60 (4th Cir.1996); *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir.1994). Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, non-discriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The plaintiff must then " 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Id.*

 In the instant case, it is undisputed that Plaintiff is an African–American male, although Defendant disputes that Plaintiff has a disability covered by the Rehabilitation Act.[7] With regard to the non-competitive career ladder promotion, the parties disagree about whether Plaintiff actually applied for and was qualified for the promotion. Plaintiff argues that the Career Intern position he held was a career ladder position which entitled him to a non-competitive promotion. However, even if Plaintiff could show that he held a

---

**6.** Plaintiff also alleges that the competitive Workforce 21 promotion process had a disparate impact on him. Disparate impact claims arise " 'where facially neutral rules or policies are applied in a way that affects the protected class differently from other groups.' " *Pathways Psychosocial v. Town of Leonardtown, MD*, 133 F.Supp.2d 772, 788 (D.Md.2001) (citations omitted). Plaintiff purports to attack the subjective decision making in the promotion process of Workforce 21 as having a disparate impact. However, Plaintiff does not and cannot allege that subjective decision making itself is a practice that discriminates. *See Brooks v. Circuit City Stores, Inc.*, 1996 WL 406684, *4 (D.Md.1996). Rather, Plain-

tiff can only allege that it allows a situation to exist in which the individual members of the promotion panel are able to discriminate intentionally. *Id.* The gravamen of the claim remains individual employment decisions; therefore, analysis of the non-promotion claim is appropriate under a disparate treatment theory only, not disparate impact.

**7.** Defendant does not challenge Plaintiff's claim that he has a chronic facial pain condition, but rather argues that the condition does not substantially impact one of Plaintiff's "major life activities." 29 C.F.R. § 1614.203(a)(1).

career ladder position, Defendant has produced a legitimate, non-discriminatory reason why Plaintiff was not given a non-competitive promotion. Specifically, Defendant has stated that the Workforce 21 system effective as of October 1, 1998 phased out non-competitive promotions under the career ladder scheme. In order to be grandfathered under the old system, an employee must have been on a career ladder prior to that date. Plaintiff did not become a Career Intern until December 5, 1999. Accordingly, he was ineligible for a non-competitive promotion. Plaintiff has not shown that the legitimate, non-discriminatory reason offered by Defendant is pretextual. Although Plaintiff states that two female Career Interns were granted non-competitive promotions after the implementation of Workforce 21, Defendant has proffered evidence that the effective date of their selection as Career Interns was February 1, 1998, *before* the implementation of Workforce 21. *See* Paper no. 6, ex. 26. Thus, they were properly grandfathered into the career ladder scheme, unlike Plaintiff. Defendant also notes that a White female Career Intern with no disability who was appointed as a Career Intern on November 7, 1999 was, like Plaintiff, not given a non-competitive promotion because she started after the implementation of Workforce 21 had begun. Plaintiff alleges that exceptions for non-competitive promotions were made after the implementation of Workforce 21, but has failed to provide any evidence to substantiate this allegation. Thus, Plaintiff has not and cannot overcome Defendant's legitimate, non-discriminatory reason with respect to a non-competitive promotion.

 Plaintiff similarly cannot prove pretext with respect to Defendant not selecting him for a competitive promotion to Band 2. Even if Plaintiff could establish a *prima facie* case of discrimination regarding the competitive promotion, an issue the court need not conclusively decide here,

Defendant has produced legitimate, non-discriminatory reasons for Plaintiff's non-selection. In particular, Defendant has shown that Plaintiff was not selected for the Band 2 promotion because the promotion panel determined that he lacked breadth of assignments and experience, his skills narrative did not support the required level of skill proficiency, and he lacked significant experience and/or skills. *See* Paper no. 6, ex. 29. Defendant ranked last of all the candidates in the promotion process. In order to overcome the legitimate, non-discriminatory reasons for his non-selection, Plaintiff "must establish that [he] was the better qualified candidate for the position sought." *Evans*, 80 F.3d at 960 (citing *Gairola v. Virginia Dep't of Gen. Services*, 753 F.2d 1281, 1287 (4th Cir.1985)). Plaintiff has failed to offer any evidence to do so. Although Plaintiff has submitted positive evaluations of his work performance from other supervisors of co-workers, *see* Paper no. 1, ex. C, D, they do not begin to establish that Plaintiff was *more qualified* for the Band 2 promotion than the four candidates who were selected. Because Plaintiff has not proven that Defendant's legitimate, non-discriminatory reasons for his non-selection are pretextual, Defendant is entitled to summary judgment on the non-promotion claim.

## B. Retaliation

 Plaintiff alleges that NIMA management retaliated against him for participating in protected EEO activity by downgrading his performance rating from "excellent" in FY 1999 to "successful" in FY 2000. Title VII "prohibits an employer from discriminating against an employee in retaliation for that employee's opposition to, or complaint about, an unlawful employment practice." 42 U.S.C. § 2000e–3(a). Where, as here, Plaintiff sets forth no direct evidence of retaliation, Plaintiff may satisfy the burden of proof

through the indirect, burden-shifting method of proof set forth in *McDonnell Douglas, Burdine*, and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Fitch v. Solipsys Corp.*, 94 F.Supp.2d 670 (D.Md.2000) ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII") (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir.2000)).

■■■■■ In order to establish a *prima facie* case of retaliation, a plaintiff must show (1) that the employee engaged in protected activity; (2) that the employer took an adverse employment action against the employee; and (3) that a causal connection existed between the protected activity and the adverse action. *See Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir.2001); *Munday v. Waste Management of North Am., Inc.*, 126 F.3d 239, 242 (4th Cir.1997). In the case at bar, it is undisputed that Plaintiff engaged in protected EEO activity when he filed his internal discrimination complaint. With respect to the second element, the Fourth Circuit Court of Appeals has held that an adverse employment action includes any retaliatory act "if, but only if, that act ... results in an adverse effect on the 'terms, conditions, or benefits'" of employment. *Von Gunten*, 243 F.3d at 866 (quoting *Munday*, 126 F.3d at 243). Here, the alleged adverse employment action was the downgrade of Plaintiff's performance rating from "excellent" to "successful." A retaliatory downgrade of performance evaluation could constitute an adverse employment action, but only if it negatively impacts a term, condition, or benefit of employment. *See id.* at 867; *Thompson v. Potomac Electric Power Company*, 312 F.3d 645 (4th Cir.2002); *see also Spears v.*

*Missouri Dept. of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir.2000) ("A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment ... [and] is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment."). Here, Plaintiff has offered no evidence that his performance rating of "successful" negatively impacted his pay, hours, responsibilities, benefits, or job security in any way. Plaintiff merely asserts that if Plaintiff had received five fewer points, he would have been placed on a "PIP" and would be in danger of losing his job. This hypothetical assertion is insufficient to satisfy the requirement that Plaintiff actually suffered an adverse impact on the terms, conditions, or benefits of his employment. Accordingly, Defendant is entitled to summary judgment on the retaliation claim.[8]

### C. Breach of Contract

■■■■■ Plaintiff alleges that NIMA breached the promise it made to him in the Vacancy Announcement for the Career Intern position that he would be mentored, trained, prepared for promotions and afforded a fair opportunity to obtain those promotions. Plaintiff claims that had those representations not been made to him, he would have accepted another offer from the Department of Defense for a career ladder position with promotion potential to GS–8. This breach of contract claim must fail. The federal employment relationship is not governed by the law of contracts, but rather by statute. *See, e.g., Urbina v. United States*, 192 Ct.Cl. 875, 881, 428 F.2d 1280, 1284 (1970) ("public

**8.** Because Plaintiff has failed to allege or provide evidence of an adverse employment action, the court need not (and cannot) address the third prong of the retaliation *prima facie* case.

employment does not ... give rise to a contractual relationship in the conventional sense.") Thus, the Vacancy Announcement for the Career Intern position does not constitute an employment contract between Plaintiff and Defendant. Further, the Supreme Court has foreclosed arguments of equitable estoppel against the federal government where, as here, public monies are at stake. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 426, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Accordingly, the motion for summary judgment with respect to this claim will be granted.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment will be granted with respect to all claims. A separate Order will be entered.

## MEMORANDUM OPINION ON MOTION FOR RE-CONSIDERATION

Presently pending and ready for resolution is Plaintiff Rickey Medlock's motion for reconsideration, pursuant to FED. R. CIV. P. 59 and 60, of the court's December 31, 2002 order granting Defendant's motion for summary judgment. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court shall deny the motion.

## I. Standard of Review

### A. Rule 59

 "A motion for reconsideration [pursuant to FED. R. CIV. P. 59(e) ] is granted only in limited circumstances." *Microbix Biosystems, Inc. v. BioWhittaker, Inc.,* 184 F.Supp.2d 434, 436 (D.Md.2000). "[T]he federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed

in a decision on the merits." *White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). It may be made for one of three reasons:

> (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not [previously] available ...; or (3) to correct a clear error of law or prevent manifest injustice.

*Hill v. Braxton,* 277 F.3d 701, 708 (4th Cir.2002). "[A] motion to reconsider is not a license to reargue the merits or present new evidence." *Royal Insurance Co. of America v. Miles & Stockbridge, P.C.,* 142 F.Supp.2d 676, 677 n. 1 (D.Md.2001), *citing RGI, Inc. v. Unified Indus., Inc.* 963 F.2d 658 (4th Cir.1992).

### B. Rule 60

 FED. R. CIV. P. 60(b) provides that:

> the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Rule 60(b) is reserved for special limited circumstances where equity requires reconsideration. *See generally* Charles A. Wright & Arthur R. Miller, 11 FEDERAL

PRACTICE AND PROCEDURE § 2857. A party moving for reconsideration of a summary judgment order "faces a substantial burden." *FDIC v. Heidrick*, 812 F.Supp. 586, 588 (D.Md.1988), *aff'd sub nom. FDIC v. American Cas. Co. of Reading, Pa., Inc.*, 995 F.2d 471 (4th Cir.1993). As stated by the Fourth Circuit:

> To bring himself within Rule 60(b), the movant must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances. *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir.1979). Once the movant has made such a showing, he must proceed to satisfy one or more of the rule's six grounds for relief from judgment, which include "mistake, inadvertence, surprise, or excusable neglect" under subsection (1), "a prior judgment upon which [the judgment] is based has been reversed or otherwise vacated" under subsection (5), and "any other reason justifying relief from the operation of the judgment" under subsection (6). We have explained, however, that these grounds for relief often overlap, and it is difficult if not inappropriate in many cases to specify or restrict the claim for relief to a particular itemized ground. *Compton v. Alton Steamship Co.*, 608 F.2d at 102. This overlapping and the broad phrasing of the rule free courts to do justice in cases in which the circumstances generally measure up to one or more itemized grounds.

*Werner v. Carbo*, 731 F.2d 204, 206–07 (4th Cir.1984).

## II. Analysis

Plaintiff bases his motion for reconsideration primarily on two arguments, one procedural and one substantive: (1) the court made a clear error of law in granting summary judgment before discovery had taken place, and (2) the court made a clear error of law with respect to Plaintiff's disparate impact claim.

### A. Summary Judgment Before Discovery

 Plaintiff argues in his reply to Defendant's opposition to his motion for reconsideration that the granting of summary judgment prior to discovery was a "clear error of law" and, therefore, falls within one of Rule 59(e)'s three grounds for reconsideration.[1] Generally speaking, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, as the court noted in its December 31, 2002 opinion, a party opposing summary judgment may not merely assert in his opposition that discovery is necessary. Rather, if a party believes that discovery is necessary for it to demonstrate a genuine issue of material fact, the party must file a Rule 56(f) affidavit that states that it "could not properly oppose a motion for summary judgment without a chance to conduct discovery," *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir.1996), and that "particularly specifies legitimate needs." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995). The *Evans* court warned litigants that it places "great weight on the Rule 56(f) affidavit" and that " '[a] reference to Rule 56(f) and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substi-

---

1. Plaintiff claims that, for the same reasons discussed with respect to Rule 59(e), his arguments also fall within Rule 60(b)(6) which allows the court to amend its decision for "any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b)(6).

tute for a Rule 56(f) affidavit.'" *Evans*, 80 F.3d at 961 (citation omitted). The court warned that failure to file an affidavit under Rule 56(f) is "itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Id., citing Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir.1994).

Plaintiff concedes that he did not file the affidavit required by Rule 56(f) setting forth the reasons why he could not "present by affidavit facts essential to justify [his] opposition ...." FED. R. CIV. P. 56(f). He argues, however, that he met the substantive requirements of Rule 56(f), though not in affidavit form, in his opposition to Defendant's motion for summary judgment.[2] For support of this argument, Plaintiff cites to *Harrods Ltd. v. Sixty Internet Domain Names, et al.*, 302 F.3d 214 (4th Cir.2002), where the Fourth Circuit weighed the "general rule [that] summary judgment is appropriate only after 'adequate time for discovery,'" against the affidavit requirement of Rule 56(f). *Id.* at 244 (internal citations omitted). In *Harrods*, the district court had granted summary judgment as to six Argentinian domain names at the beginning of discovery in an *in rem* trademark suit brought by Harrods UK under the Anticybersquatting Consumer Protection Act. *Id.* at 242. In its opposition to the motion for summary judgment, as well as during a hearing, Harrods UK repeatedly stated that it needed discovery to obtain evidence that the defendants acted in bad faith, but it never filed a Rule 56(f) affidavit. *Id.* at 245–46. In granting early summary judg-

ment, the district court did not base its decision on Harrod UK's failure to submit a Rule 56(f) affidavit, but rather on its conclusion that discovery was not needed to resolve the case as to those six domain names. *Id.* at 246.

In considering whether the district court had prematurely cut off discovery, the Fourth Circuit noted that

> Harrods UK made it clear to the district court in the summary judgment proceedings that its case hinged on its ability to establish Harrods BA's bad faith, which is a fact-specific issue. Harrods UK repeatedly explained to the district court both in writing and orally that more discovery was needed and that it was too early to decide the motion for summary judgment. The district court was thus fully informed about why Harrods UK was requesting the normal time to conduct discovery, and the absence of a Rule 56(f) affidavit did not figure in the court's decision to grant early summary judgment to the six Argentina Names. In these circumstances, the purposes of Rule 56(f) were served. As a result, it would be unfair to penalize Harrods UK for failing to file the formal affidavit called for by the rule.

*Id.* at 246. However, the court also stated that

> [a]lthough the particular circumstances of this case mean that Harrods UK will not be penalized for failing to state its case for more discovery in an affidavit, we hasten to add that parties who ignore

---

**2.** Additionally, Plaintiff's counsel now submits an affidavit in order to comply with "the letter, as well as the spirit of Rule 56(f)." Paper no. 15, at 2. This affidavit is clearly overdue. In the affidavit, Plaintiff's counsel tries to explain that she did not file a Rule 56(f) affidavit earlier because she did not believe that Plaintiff's case was "even in the category of cases" requiring the non-moving party to explain why discovery was needed. *Id.*, Ex. A, ¶ 4. However, to the extent that Rule 60(b) applies here, it does not protect Plaintiff from his lawyer's miscalculations. *See, e.g., Evans v. United Life & Accident Ins. Co.*, 871 F.2d 466, 472 (4th Cir.1989) ("a lawyer's ignorance or carelessness do [sic] not present cognizable grounds for relief under [Rule] 60(b)").

Rule 56(f)'s affidavit requirement do so at their own peril. We reiterate that our court expects full compliance with Rule 56(f) and that the "failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Evans,* 80 F.3d at 961 (quotations omitted).

*Id.,* 246 n. 19.

In *Evans,* an employment discrimination case more factually similar to the one at hand, the court held that summary judgment was properly granted without discovery because even though the plaintiff's opposition memorandum referred to lack of opportunity for discovery, the plaintiff had not filed a Rule 56(f) affidavit, nor had she filed any discovery requests or moved for a continuance. *See Evans,* 80 F.3d at 961. The court ruled that the plaintiff's mention of discovery concerns twice in her opposition memorandum was insufficient to compel denial of the defendant's summary judgment motion. *Id.* Similarly, in the instant case, Plaintiff generally raised discovery concerns twice, without clearly informing the court what discovery he believed was needed. *See* Paper no. 9, at 2, 11.

While the specific facts in *Harrods* led the court to conclude that the plaintiff's efforts had served the purpose of the Rule 56(f) affidavit, as noted earlier, it clearly did not eliminate the Rule 56(f) affidavit requirement discussed in *Evans* and *Nguyen.* The *Harrods* court specifically preserved the principle that "failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods,* 302 F.3d at 246 n. 19 (internal citation omitted). For the above reasons, the court does not agree that it was a clear error of law to grant summary judgment without discovery in the current case in the absence of a Rule 56(f) affidavit.

Plaintiff further argues that even if the court's strict adherence to the Rule 56(f) affidavit requirement is not a clear error of law, it would still result in "manifest injustice." The court cannot agree. The gravamen of Plaintiff's argument is that the court's application of a procedural rule to Plaintiff's case deprives him of the right to be protected from illegal discrimination. There is no support in the law for this proposition; indeed, this argument flies in the face of precedent from this circuit and others applying Rule 56(f). *See, e.g., Evans,* 80 F.3d at 961–62; *Nguyen,* 44 F.3d at 242.

## B. Disparate Impact Claims

■■■■■■ Plaintiff re-asserts his claims that the Workforce 21 promotion policy and nepotism in its application purportedly had a disparate impact on African–Americans. To the extent that Plaintiff is simply trying to reargue the case, he is not permitted to do so. Where a motion does not raise new arguments, but merely urges the court to "change its mind," relief is not authorized. *United States v. Williams,* 674 F.2d 310, 312 (4th Cir.1982). To the extent Plaintiff is arguing, as he states for the first time in his reply to Defendant's opposition, that the court made an error of law with regard to this claim, the court does not agree. In the December 31, 2002 memorandum opinion, the court noted that what Plaintiff purported to be a disparate impact claim really fell within the category of a disparate treatment claim:

> Disparate impact claims arise " 'where facially neutral rules or policies are applied in a way that affects the protected class differently from other groups.' " *Pathways Psychosocial v. Town of Leonardtown, MD,* 133 F.Supp.2d 772, 788 (D.Md.2001) (citations omitted). Plaintiff purports to attack the subjective decision making in the promotion process of Workforce 21 as having a

disparate impact. However, Plaintiff does not and cannot allege that subjective decision making itself is a practice that discriminates. *See Brooks v. Circuit City Stores, Inc.*, 1996 WL 406684, *4 (D.Md.1996). Rather, Plaintiff can only allege that it allows a situation to exist in which the individual members of the promotion panel are able to discriminate intentionally. *Id.* The gravamen of the claim remains individual employment decisions; therefore, analysis of the non-promotion claim is appropriate under a disparate treatment theory only, not disparate impact.

Plaintiff has offered no reason to conclude that the court's analysis was a clear error of law.[3] With regard to the competitive promotion system of Workforce 21 in general, and the alleged nepotism of Judy Schiebel, the white, female head of the promotion panel, in particular, the basic issue is individual treatment of Plaintiff, not a facially neutral test or policy that disparately impacts blacks in general. Therefore, the court declines to grant Plaintiff's motion for reconsideration of this claim.

### III. Conclusion

For the foregoing reasons, the court will deny Plaintiff Rickey Medlock's motion for reconsideration. A separate Order will be entered.

---

**3.** In any event, as Defendant noted in its reply to Plaintiff's opposition to its motion to dismiss or for summary judgment, an attempt by Plaintiff to bring an actual disparate impact claim would likely have been subject to dismissal for failure to exhaust administrative remedies because he did not raise this issue with an EEO counselor or in his EEO complaint. *See* 42 U.S.C. § 2000e–16(c); *Brown v. General Services Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Zografov v. V.A. Medical Center*, 779 F.2d 967, 968–69 (4th Cir.1985).